**H. Dean EVANS, et al., Appellants–
Defendants,**

v.

**Michael TUTTLE, et al.,
Appellees–Plaintiffs.**

**No. 73A05–9206–CV–200.**

Court of Appeals of Indiana,
Fifth District.

May 19, 1993.

Linley E. Pearson, Atty. Gen., David Michael Wallman, Deputy Atty. Gen., Indianapolis, for appellants-defendants.

Kenneth J. Falk, Christopher B. Haile, Legal Services Organization Of Indiana, Inc., Dana Long, Milo G. Gray, Jr., Indiana Advocacy Services, Indianapolis, for appellees-plaintiffs.

BARTEAU, Judge.

This is a case concerning the rights of disabled children. When the trial court decided the State could not deny disabled children over the age of 18 a free and appropriate education, the State disagreed and this appeal ensued.

### FACTS

Indiana has two classifications for disabled[1] students: S–1 students are those who are able to be educated in the local school system; S–5 students are those who, because of the severity of their disabilities, cannot be educated at the local level and must be placed in a special educational setting. Three S–5 students are the representative members of a certified class consisting of all disabled children in the State of Indiana who are receiving or who desire to receive special education. The class size is approximately 102,000; 67 of those are S–5 students and the remainder are S–1 students. The students brought suit against the State to enjoin the State from denying education to disabled students between the ages of 18 and 22.

The trial court granted summary judgment for the students and enjoined the State from failing to provide a free and appropriate public education to 18, 19, 20

---

1. "Disabled" has been substituted for "handicapped" except in quotations and statutes.

and 21 year old disabled students who desire to continue their education and have not yet received a high school diploma. The court held that "[i]nasmuch as a non-disabled student in Indiana may attend public school at 18, 19, 20, or 21 and a disabled student may be denied these services under the policies and practices of [the State], these policies and practices violate ... the Indiana Constitution, Indiana law and the Individuals with Disabilities Education Act."

## IS THE QUESTION MOOT?

During oral argument held at Hanover College on January 27, 1993, the State urged that the promulgation of new regulations rendered the issue before this court moot and consequently urged that the injunction be vacated and the appeal dismissed. At the time this case was tried, the state regulations covering the education of disabled children provided that the education of S–5 students terminated automatically at the end of the school year in which they turned nineteen years of age. 511 IAC 7–2–1. The regulations covering the education of S–1 students provided that the education of disabled students over the age of eighteen was discretionary within the local school district. 511 IAC 7–1–2. On January 8, 1992, the State of Indiana enacted new regulations covering the education of disabled children. The new regulations eliminate the distinction between S–5 and S–1 students. The education of both S–5 and S–1 students is now covered by 511 IAC 7–4–1(E) which provides that a "public school corporation may provide special education for students nineteen (19) years of age through twenty-one (21) years of age" and that the student's "case conference committee shall determine whether the student's needs indicate the student would continue to benefit from the educational program provided by the public school corporation or from entry into adult services or employment."

The State contends that this regulation, which grants to the case conference committee the authority to decide if a disabled child's education will continue, renders this appeal moot. The students respond that the new regulation, while eliminating the distinction between S–5 and S–1 students, still impermissibly permits the State to terminate a disabled child's education prior to that child attaining the age of 22. They essentially argue that the method by which a child's education is terminated is irrelevant; that it is the ability to do so which is impermissible.

An issue on appeal becomes moot when:

1. It is no longer "live" or when the parties lack a legally cognizable interest in the outcome;

2. The principal questions in issue have ceased to be matters of real controversy between the parties; or

3. The court on appeal is unable to render effective relief upon an issue.

*Matter of Tina T.* (1991), Ind., 579 N.E.2d 48.

The State characterizes the issue for review as "Whether a state trial court can remove the educational placement decision regarding a disabled student from the specific administrative mechanism mandated by controlling federal and state law." The students characterize the issue presented for review as "Whether the trial court was correct in holding that [the State] may not lawfully retain the discretion to deny special education to disabled students between the ages of 18 and 21." We find the students' characterization of the issue to more closely reflect the issue presented to the trial court and its holding thereon.

The students' amended complaint presented the following claims for relief:

25. To the extent that 511 IAC 7–1–2 and 511 IAC 7–2–1 purport to restrict or deny access to education for those 18 years of age and older, the regulations violate IC 20–1–6–1 which defines handicapped children as being at least 3 years of age but less than 22 years of age.

26. Defendants' regulations 511 IAC 7–1–2 and 511 IAC 7–2–1, inasmuch as they restrict or deny access to education for those 18 years and older, violate IC 20–2.1–2–2 which provides that the public schools of Indiana shall be open to all

children until they complete their course of study.

27. Defendants' regulations, 511 IAC 7–1–2 and 511 IAC 7–2–1, inasmuch as they restrict or deny access to education for those 18 years of age and older, violate Art. 8, § 1 of the Indiana Constitution which provides that the common schools shall be equally open to all.

28. Inasmuch as nonhandicapped students can continue in public schools when 18, 19, 20 or 21, defendants' regulations, 511 IAC 7–1–2 and 511 IAC 7–2–1, which restrict or deny access to education for those 18 years of age and older, violate Section 504 of the Rehabilitation Act of 1973, 29 USC § 794, in that they permit and, in fact, encourage discrimination on the basis of handicap.

29. Federal law, 34 CFR § 300.-300(b)(1), allows handicapped education to be restricted for 18, 19, 20 and 21 year old students only if State law does not require the provision of handicapped education in those groups. However, as is indicated above, Indiana law provides that 18, 19, 20 and 21 year old handicapped children must be educated. Therefore, defendants' regulations restricting education for 18, 19, 20 and 21 year olds are void as violative of the obligation, imposed by Federal law, to provide a free and appropriate education, 20 USC § 1412; Art VI, US Constitution.

■ The crux of the case was, and still is, whether the State may deny education to disabled students under the age of 22. Nevertheless, the State argues that "[w]here a new enactment replaces the old, a common result is for the reviewing court to vacate the decision of the lower court construing the now-irrelevant enactment" and cites to two cases in support of this contention—one in the Appellant's brief, and one in the reply brief. The case referred to in the Appellant's brief, *Ragsdale v. Turnock* (7th Cir.1988), 841 F.2d 1358, is an Illinois case addressing the voluntary cessation of illegal conduct and is not analogous to the situation here. The Reply

brief cites to *Indiana Chapter of NORML v. Sendak*, (7th Cir.1980), 631 F.2d 734 (TABLE). Apparently recognizing that citation to a table is not very enlightening, the State refers us to a related case addressing the constitutionality of the legislation which replaced that challenged in *NORML*. That case, *Nova Records, Inc. v. Sendak* (7th Cir.1983), 706 F.2d 782, 784, makes a brief reference to *NORML* but states only that when the old law was expressly repealed, the appeal regarding it was dismissed for mootness.[2] The authority provided by the State is utterly devoid of either facts or analysis. Consequently, we decline to give it any precedential value.

■ Even though in the case before us the law has been changed, the change in no way resolves the question presented to the trial court or that presented on appeal. It only alters the mechanism used to achieve the same result. Thus, the case is not moot because it is still "live", the parties still entertain a legally cognizable interest in the outcome, the principal question at issue is still a matter of real controversy and this court is able to render effective relief.

■ Further, when issues are of great public importance and likely to recur, as is the case here, Indiana recognizes a public interest exception to the mootness doctrine. *Matter of Lawrance* (1991), Ind., 579 N.E.2d 32.

### EDUCATING HANDICAPPED CHILDREN OVER THE AGE OF 18

The trial court found that because Indiana permits non-disabled children aged 18, 19, 20 and 21 to attend school until they complete high school graduation requirements, Indiana's policy of discretionary education for disabled children over the age of 18 violates Indiana law, the Indiana Constitution and federal law.

■ As a condition of receiving federal financial assistance, the Individuals with Disabilities Education Act (IDEA), 20

---

**2.** The law involved was one attempting to criminalize the sale of drug paraphernalia. The

State's first two attempts to enact a constitutional statute on the subject were failures.

U.S.C. §§ 1401, *et seq,* requires participating states to insure a free and appropriate public education to all disabled children. Because Indiana avails itself of the federal financial assistance, it is subject to federal regulation. *See* I.C. 20–1–6–4.

■ IDEA provides that education must be available to all disabled children between the ages of 3 and 21, unless providing services to children aged 3 to 5 and 18 to 21 is inconsistent with state law or practice or a court order.

A free appropriate public education will be available for all children with disabilities between the ages of three and eighteen within the State not later than September 1, 1978, and for all children with disabilities between the ages of three and twenty-one within the State not later than September 1, 1980, except that, with respect to children with disabilities aged three to five and aged eighteen to twenty-one, inclusive, the requirements of this clause shall not be applied in any State if the application of such requirements would be inconsistent with State law or practice, or the order of any court, respecting public education within such age groups in the State.

20 U.S.C. § 1412(2)(B). The requirement that a free and appropriate public education be provided to disabled children over the age of 18 is clarified by the following federal regulation:

(b) *Age ranges 3–5 and 18–21.* This paragraph provides rules for applying the requirement in paragraph (a) of this section to handicapped children aged three, four, five, eighteen, nineteen, twenty, and twenty-one:

(1) If State law or a court order requires the State to provide education for handicapped children in any disability category in any of these age groups, the State must make a free appropriate public education available to all handicapped children of the same age who have that disability.

(2) If a public agency provides education to non-handicapped children in any of these age groups, it must make a free appropriate public education available to at least a proportionate number of handicapped children of the same age.

(3) If a public agency provides education to 50 percent or more of its handicapped children in any disability category in any of these age groups, it must make a free appropriate public education available to all its handicapped children of the same age who have that disability. This provision does not apply to children aged three through five for any fiscal year for which the State receives a grant under 619(a)(1) of the Act.

(4) If a public agency provides education to a handicapped child in any of these age groups, it must make a free appropriate public education available to that child and provide that child and his or her parents all of the rights under Part B of the Act and this part.

(5) A State is not required to make a free appropriate public education available to a handicapped child in one of these age groups if:

(i) State law expressly prohibits, or does not authorize, the expenditure of public funds to provide education to nonhandicapped children in that age group; or

(ii) The requirement is inconsistent with a court order which governs the provision of free public education to handicapped children in that State.

34 C.F.R. 300.300.

The State acknowledges that Indiana provides a free appropriate public education to non-disabled students who have not yet completed high school graduation requirements and are over the age of 18. The State does not contend that it is exempt from the IDEA requirement to educate disabled children over the age of 18 pursuant to any of the enumerated exceptions contained in 34 C.F.R. 300.300 and does not contend that the expenditure of public funds for the education of disabled children in these age groups is expressly prohibited by State law or inconsistent with a court order. Rather, the State contends that the current statutory scheme adequately protects the disabled children's right to a continued education.

In Indiana, a "handicapped child" is defined as "any child who is at least three (3) years of age but less than twenty-two (22) years of age and who because of physical or mental disabilities is incapable of being educated properly and efficiently through normal classroom instruction, but who with the advantage of a special educational program may be expected to benefit from instruction in surroundings designed to further the educational, social and economic status of the child." I.C. 20–1–6–1.

The Indiana regulation governing the education of disabled children provides:

A public school corporation may provide special education for students nineteen (19) years of age through twenty-one (21) years of age. The case conference committee shall determine whether the student's needs indicate the student would continue to benefit from the educational program provided by the public school corporation or from entry into adult services or employment. The determinations of the case conference committee are subject to the due process procedures of 511 IAC 7–15–5.

511 IAC 7–4–1(E) (effective 1/8/92).

The case conference committee is made up of the parents and local school professionals who review and evaluate a student's progress and develop an individualized special education plan designed to meet the unique needs of the student. The State contends that IDEA grants the case conference committee the authority to decide that a disabled student under the age of 22 needs no more education.

IDEA requires the State to develop an individualized education program for each disabled student.

(20) The term "individualized education program" means a written statement for each child with a disability developed in any meeting by a representative of the local educational agency or an intermediate educational unit who shall be qualified to provide, or supervise the provision of, specially designed instruction to meet the unique needs of children with disabilities, the teacher, the parents or guardian of such child, and, whenever appropriate, such child, which statement shall include—

(A) a statement of the present levels of educational performance of such child,

(B) a statement of annual goals, including short-term instructional objectives,

(C) a statement of the specific educational services to be provided to such child, and the extent to which such child will be able to participate in regular educational programs,

(D) a statement of the needed transition services for students beginning no later than age 16 and annually thereafter (and, when determined appropriate for the individual, beginning at age 14 or younger), including, when appropriate, a statement of the interagency responsibilities or linkages (or both) before the student leaves the school setting,

(E) the projected date for initiation and anticipated duration of such services, and

(F) appropriate objective criteria and evaluation procedures and schedules for determining, on at least an annual basis, whether instructional objectives are being achieved.

In the case where a participating agency, other than the educational agency, fails to provide agreed upon services, the educational agency shall reconvene the IEP team to identify alternative strategies to meet the transition objectives.

20 U.S.C. § 1401(a)(20). The State proposes that if the case conference committee develops a course of study for the disabled student, and the student completes that course of study prior to turning 22, the student's education may be terminated. The State contends that the language in 20 U.S.C. § 1401(a)(20)(E) to the effect that the individual education program designed for each student must contain a written statement including the projected date of initiation and anticipated duration of such services supports its position that the case conference committee is authorized to ter-

minate a disabled child's education prior to the child reaching the age of 22.

The students counter that IDEA can in no way be construed to permit the case conference committee the authority to determine that a child has received the maximum potential benefit from education. In a well-written brief, the students point out that IDEA and other legislation were specifically enacted to prevent states from doing just that. Support for the students' position that IDEA and other legislation were specifically enacted to prevent states from determining that a disabled child would not benefit from education and that even the most profoundly disabled must be educated is widespread in cases involving children under the age of 18. *See e.g., Christopher M. v. Corpus Christi Independent School District* (5th Cir.1991), 933 F.2d 1285; *Polk v. Central Susquehanna Intermediate Unit 16* (3rd Cir.1988), 853 F.2d 171, *cert. denied* (1989), 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970; *Abrahamson v. Hershman* (1st Cir.1983), 701 F.2d 223; *Kruelle v. New Castle County School District* (3rd Cir.1981), 642 F.2d 687.

As explained by Judge Bownes of the United States Court of Appeals, First Circuit:

School districts cannot avoid the provisions of the Act by returning to the practices that were wide-spread prior to the Act's passage, and which indeed were the impetus for the Act's passage, of unilaterally excluding certain handicapped children from a public education on the ground that they are uneducable. The law explicitly recognizes that education for the severely handicapped is to be broadly defined, to include not only traditional academic skills, but also basic functional life skills, and that educational methodologies in these areas are not static, but are constantly evolving and improving. It is the school district's responsibility to avail itself of these new approaches in providing an education program geared to each child's individual needs. The only question for the school district to determine, in conjunction with the child's parents, is what constitutes an appropriate individualized education program (IEP) for the handicapped child. We emphasize that the phrase "appropriate individualized education program" cannot be interpreted, as the school district has done, to mean "no educational program."

*Timothy W. v. Rochester, New Hampshire School District* (1st Cir.1989), 875 F.2d 954, 973, *cert. denied* (1989), 493 U.S. 983, 110 S.Ct. 519, 107 L.Ed.2d 520.

The State responds by arguing that high school graduation is not a viable goal for many students and that the students' position would "require (or condemn) the 21-year-old retarded adult to endlessly repeat math classes he can never master in search of a high school diploma he is incapable of obtaining." They also assert that disabled students are not entitled to a "uniquely crafted and customized" education program but are "free to continue their high school studies along with their non-handicapped brethren."

The State's response seems to ignore two things: First, a child over the age of 18 has the option whether or not to continue with an education. If the child is incapable of making that decision, the parents would be free to stop the education.

Second, the State seems to ignore the word "appropriate" in the phrase "free appropriate public education." As stated in *Board of Education v. Rowley* (1982), 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690:

Implicit in the congressional purpose of providing access to a "free appropriate public education" is the requirement that the education to which access is provided be sufficient to confer some educational benefit upon the handicapped child. It would do little good for Congress to spend millions of dollars in providing access to a public education only to have the handicapped child receive no benefit from that education. The statutory definition of "free appropriate public education," in addition to requiring that States provide each child with "specially designed instruction," expressly requires the provision of "such ... supportive services ... as may be required to assist a

handicapped child *to benefit* from special education." § 1401(17) (emphasis added). We therefore conclude that the "basic floor of opportunity" provided by the Act consists of access to specialized instruction and related services which are individually designed to provide educational benefit to the handicapped child.

*Id.*, 458 U.S. at 200–01, 102 S.Ct. at 3048.

"Education" for disabled children may take many forms. Besides traditional curriculum, "education" may consist of such things as personal hygiene or basic daily living skills. The "education" must be appropriate to the individual needs of the child. Permitting a severely disabled child to attend a public high school with their "brethren" would in many instances be of no educational value to the student. The education must instead be tailored to their needs, which is exactly what IDEA requires.

The State's argument that the case conference committee may terminate a disabled child's education prior to the child attaining the age of 22 is not persuasive. The issue has been routinely decided to the contrary. The fact that a disabled child turns 18 years of age does not change the nature of education to which they are entitled. A State is not free to design an individualized education program that consists of no education. So long as the State of Indiana continues to provide education to non-disabled children over the age of 18, it must also provide education to disabled children of the same age, at a minimum in conformity with the requirements contained in 34 C.F.R. 300.300 and that education must be individually designed to meet the needs of the child. *See also Susan R.M. v. Northeast Independent School District* (5th Cir.1987), 818 F.2d 455; *Helms v. Independent School District No. 3* (10th Cir.1984), 750 F.2d 820, *cert. denied* (1985), 471 U.S. 1018, 105 S.Ct. 2024, 85 L.Ed.2d 305.

In summary, we agree with the trial court that the State should be permanently enjoined from utilizing 511 IAC 7–4–1(E) or any policy to restrict disabled children aged 18, 19, 20, or 21, who desire to continue their education and who have not yet completed their high school education, from receiving a free appropriate public education.

AFFIRMED.

SHARPNACK, C.J., and RUCKER, J., concur.