**MADISON AREA EDUCATIONAL SPECIAL SERVICES UNIT and Southwestern Consolidated School Corporation, Appellants–Defendants,**

v.

**Christopher DANIELS, by his parents and next friends, Paul and Louise DANIELS, Appellee–Plaintiff.**

No. 39A05–9603–CV–107.

Court of Appeals of Indiana.

April 21, 1997.

Rehearing Denied June 13, 1997.

Thomas E. Wheeler, II, Kightlinger & Gray, Indianapolis, for appellants–defendants.

Pamela Carter, Attorney General, Jon Laramore Chief Counsel, Appeals Division Indianapolis, for amicus curiae.

Joseph A. Colussi, Colussi Law Office Madison, for appellee–plaintiff.

## OPINION

BARTEAU, Judge.

This is an appeal from an award of attorneys fees against the Madison Area Education Special Services Unit and the Southwestern Consolidated School Corporation (collectively "School") and in favor of Paul and Louise Daniels as parents and natural

guardians of Christopher Daniels (collectively "Danielses"). Four issues are presented, which we consolidate and restate as:

1. Whether the School waived the affirmative defense of statute of limitations?

2. Whether the trial court erred in its determination that the Danielses were the prevailing party?

3. Whether the trial court erred when it concluded that the Danielses' claim was not barred by the provisions of 20 U.S.C. § 1415(e)(4)(D)?

We affirm.

### FACTS

The Individuals with Disabilities Education Act ("IDEA"),[1] requires participating states, as a condition of receiving federal assistance, to provide a free and appropriate public education to all disabled children. *Evans v. Tuttle*, 613 N.E.2d 854, 857–58 (Ind.Ct.App. 1993). Indiana is a participating state. *Id.* The IDEA provides that education must be available to all disabled children between the ages of three and twenty-one, subject to certain exceptions. *Evans*, 613 N.E.2d at 858. Upon turning three years of age on September 11, 1991, Christopher Daniels was entitled to provision of services under the IDEA due to developmental delays attributable to his premature birth. The School was the entity responsible for providing those services. A case conference committee ("CCC") established an individualized education program ("IEP") for Christopher. The initial recommendation was for special education preschool placement for two days a week [4 hours a day], with occupational therapy evaluation, physical therapy evaluation, and speech evaluation. The Danielses consented to this placement. A subsequent IEP provided for the same services to which the Danielses consented. In addition, at their own expense, the Danielses placed Christopher in Pope John Preschool, a regular private preschool, two days per week.

On May 20, 1992, the CCC convened for an annual review of Christopher's placement. The Danielses indicated that Christopher would continue to attend Pope John Preschool two days per week and asked that the School provide transportation and pay the costs of Christopher attending Pope John Preschool. The CCC then recessed until May 29, 1992 to consider the issue. Upon reconvening, the School indicated that it had an agreement with the local Head Start program where other students in special preschool are able to attend both facilities. The Danielses indicated their belief that the Head Start program would not satisfy Christopher's regular preschool needs and that they would not accept the placement recommendation.

The Danielses requested a due process hearing. The hearing officer determined that it was the School's position that a regular education component was not needed for Christopher, but if needed then he should be placed in the local Head Start Program. The hearing officer further determined that dual placement in part time special education preschool and in part time regular education preschool was appropriate, that the Head Start preschool was adequate for Christopher's needs, and that the School was required to pay for the regular education component of Christopher's education. The hearing officer's decision was entered on October 8, 1992, and advised that an appeal of the decision must be implemented within thirty days following receipt of the decision.

Asserting that they were the prevailing parties, the Danielses requested that the School pay their attorney fees pursuant to title 511, rule 7–15–6(q) of the Indiana Administrative Code. The School declined by letter dated October 29, 1992. The Danielses filed a civil complaint for attorney's fees on April 2, 1993. By way of their answer, the School raised the affirmative defense of the statute of limitations. The School filed a motion for summary judgment on June 28, 1993, arguing that it was entitled to summary judgment because the Danielses had not accepted an offer of settlement which was no less favorable than the ruling of the hearing officer. The School did not raise the affirmative defense of the statute of limitations in their motion. The Danielses filed a cross-motion for partial summary judgment on

---

1. 20 U.S.C. §§ 1401, *et seq.*

July 27, 1993, arguing that they were entitled to attorney's fees and costs because they were the prevailing party. In its reply filed on August 16, 1993, the School again failed to raise the affirmative defense of the statute of limitations.

The trial court heard oral argument on the cross-motions for summary judgment on December 7, 1994,[2] and on January 5, 1995, the trial court issued an order denying the School's motion and granting the Danielses' motion. The trial court determined that the Danielses prevailed at the due process hearing and that they were therefore entitled to reasonable attorney fees. A hearing was scheduled to determine the amount of attorney fees to which the Danielses were entitled. Two days before the scheduled hearing, the School filed a second motion for summary judgment arguing for the first time a statute of limitations defense. The hearing was postponed until August 11, 1995, at which time the court took evidence on the amount and reasonableness of the Danielses' attorney's fees and heard argument on the School's second motion for summary judgment and other pending motions. On November 22, 1995, the trial court entered judgment awarding the Danielses attorney's fees and denying the School's second motion for summary judgment. It is this order from which the School appeals.

### STATUTE OF LIMITATIONS

The trial court held alternatively that the School waived the defense of statute of limitations and that the Danielses timely filed their claim for attorney fees. However, because we agree with the trial court that the affirmative defense of statute of limitations was waived, we do not address the issue on the merits.

The statute of limitations is an affirmative defense which must be both pleaded and proven by the party relying thereon. Ind.Trial Rule 8(C). While the School raised

the affirmative defense of statute of limitations in its answer to the Danielses' complaint, it did not thereafter assert the defense until after the trial court had granted summary judgment in favor of the Danielses on the question of who was the prevailing party. Whether the Danielses had timely filed their request for attorney fees was a material issue of fact which had to be asserted in response to the Danielses' motion for summary judgment. By failing to assert the defense of statute of limitations, the School waived the defense. *Associates Fin. Serv. Co. v. Knapp*, 422 N.E.2d 1261, 1264 (Ind.Ct. App.1981) (a party has the burden of asserting his affirmative defenses in a summary judgment proceeding); *Moll v. South Cent. Solar Sys., Inc.*, 419 N.E.2d 154, 159 (Ind.Ct. App.1981) (affirmative defenses must be asserted in response to a motion for summary judgment); *Flynn v. Klineman*, 403 N.E.2d 1117, 1126 (Ind.Ct.App.1980) (while affirmative defense was raised in pleadings, defendant had the burden of establishing any affirmative defense in opposition to plaintiff's cross-motion for summary judgment; by not addressing the issue either in support of defendants' motion for summary judgment or in opposition to plaintiff's cross-motion, the issue was waived); *Kline v. Kramer*, 179 Ind.App. 592, 386 N.E.2d 982, 987 (Ind.Ct. App.1979) ("If the party opposing summary judgment fails to disclose a genuine issue of material fact, which would invoke the theory of equitable estoppel, the movant is entitled to summary judgment as a matter of law.").[3]

### PREVAILING PARTY

The Indiana Administrative Code provides under title 511, rule 7–15–5(*l*)(4), that a parent involved in a due process hearing has the right to recover reasonable attorney's fees if a court determines the parent ultimately prevailed at the due process hearing, administrative appeal to the board of special education appeals, or upon judicial review in civil

---

2. This was the third time the parties had tried the cross-motions for summary judgment. Both times previously the case was withdrawn from submission upon the School's motion pursuant to Indiana Trial Rule 53.1. The issue of the statute of limitations was never raised.

3. Because we hold that the School waived any statute of limitations defense, the Danielses petition to strike certain portions of the School's reply brief addressing the merits of the statute of limitations argument is moot. Therefore, we deny the petition.

court. The Administrative Code further provides that:

> (q) A parent represented by legal counsel during the proceedings of a due process hearing, appeal, or civil court action is entitled to reimbursement for legal fees if the parent ultimately prevails. Determination of which party prevails and the amount of reimbursement shall be determined by negotiation between the parent and the public agency. If agreement cannot be reached, either party may proceed to civil court for resolution. Mediation, as described in section 3 of this rule, is not available for resolution of legal fees.

Ind.Admin.Code tit. 511, r. 7–15–6(q) (1996).

■ The School contends that the trial court erred in awarding the Danielses attorney fees because the Danielses were not the prevailing party in the due process hearing. In *Kellogg v. City of Gary,* 562 N.E.2d 685, 714 (Ind.1990), our supreme court adopted the definition of "prevailing party" established in *Texas State Teachers Ass'n. v. Garland Independent School District,* 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989). While *Garland* was decided under 42 U.S.C. § 1988, the definition of prevailing party under the IDEA and 42 U.S.C. § 1988 is the same. *Angela L. v. Pasadena Indep. School Dist.,* 918 F.2d 1188, 1193 (5th Cir.1990). In cases where plaintiffs enjoy only limited success, the plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in the litigation, thereby achieving some of the benefit the plaintiff sought in bringing the action. *Kellogg,* 562 N.E.2d at 714 (quoting *Garland,* 489 U.S. at 789, 109 S.Ct. at 1491). The degree of success is relevant to the amount of a fee, not to eligibility for a fee award. *Kellogg,* 562 N.E.2d at 714 (quoting *Garland,* 489 U.S. at 789, 109 S.Ct. at 1491).

■ The Danielses contend that they were the prevailing party because they were successful on two of the three issues they pursued. The three issues were whether a regular education preschool program was an appropriate component of Christopher Danielses' individual education plan, whether the School system was obligated to pay for the regular education component of the preschool program, and whether the Head Start program was appropriate for the regular education component of the preschool program. The Danielses contend they prevailed upon the first two issues.

The School argues that it always offered Christopher two days of regular education preschool, albeit in the Head Start program, and always offered to pay for the program. Thus, contends the School, the Danielses accomplished nothing at the due process hearing.

The decision of the hearing officer does not state that one party prevailed nor does it specifically designate the issues addressed or the prevailing party on each issue. Thus, it was incumbent upon the trial court to determine the prevailing party based on a review of the hearing officer's order and the evidence presented at the due process hearing. The trial court found that the School took the position at the due process hearing that it was not obligated to provide a regular education preschool component as part of Christopher's individual education plan and was not required to pay for the regular education program. R. 221–22.

Based on its findings, the trial court concluded:

> 18. The Daniels[es] prevailed in the administrative proceeding. The Daniels[es] established two substantive rights for Christopher Daniels, that is, (1) that a regular education preschool program is an appropriate component of the individual education plan and (2) that the school system is obligated to pay for the regular education preschool program. After establishing these substantive rights in the administrative proceeding, the defendants were permitted to allow Head Start to serve as the regular education preschool program. The Special Services Unit entered into a contract to provide the preschool program through Head Start only after the administrative hearing.

> 19. The Daniels[es] are prevailing parties as the result of establishing the two substantive rights identified by the hearing officer in framing the issues at the hearing and in his decision. *See, Kellogg v. City of*

*Gary,* 562 N.E.2d 685 (Ind.1990). The fact that the hearing officer found that Head Start could serve as an appropriate program, which the Daniels[es] had opposed, does not diminish the fact that the Daniels[es] established the substantive rights to a regular education preschool program as part of an individual education plan and the obligation of the defendants to pay for the regular education preschool program whether it be through Head Start or some other preschool program. The defendants had not paid for the regular education preschool of Christopher Daniels in the preceding school year and had no contract for payment of the regular education preschool program for Christopher Daniels at the time of the administrative hearing on September 17, 1992, which was approximately one-month after the school year had begun for Christopher Daniels. The establishment of these substantive rights by the Daniels[es] not only serves the Daniels[es], but will serve future students who have similar situations in the event that the contract between the Special Services Unit and Head Start is terminated for lack of funding or for an insufficient child count.

R. 224–26.

The trial court's determination is supported by the record. In his order, the hearing officer stated that the "school contends that a regular education component is not needed for this child, but that if needed, then the child should be placed in the local Head Start Program." R. 913. The affidavit of Dr. Patrick Leahey, the superintendent of the school corporation, was introduced at the due process hearing. In that affidavit, Dr. Leahey affirms that "The School and Co-op contended that a regular education component was not necessary, but if one was necessary it should be in the nondenominational Head Start program run by the School, not at Pope John." R. 55. In opening remarks at the due process hearing, the attorney for the School stated "an outside regular education preschool, first of all, does not fit the definition of free appropriate public education for a preschool child in this circumstance and is not the financial responsibility of the—of either the school corporation or the coopera-

tive." R. 536. In closing remarks, counsel for the School reiterated the contention that the School was not obligated to pay for a regular education preschool program, and also stated the School's perception of the Danielses' burden of proof:

> I believe that in order to carry the day here, the parents would have to prove— they would have to show two (2) things; one, that a regular education component is necessary for some goal or objective that Christopher Daniels is supposed to be achieving; that a regular education component is somehow necessary as a part of his total special education program. Again, I don't think there's any evidence in the record in that regard. Secondly, they would have to prove that the Headstart program could not fulfill whatever requirement it is that a regular education program is supposed to be fulfilling for Christopher.

R. 722. The School now claims that it always offered to place Christopher in a regular education program and to pay for the program. However, the School's own evidence presented at the due process hearing directly contradicts the School's current characterization of its position. Based on this evidence, we find no error in the trial court's determination that the Danielses prevailed on the issues of whether Christopher was entitled to a regular education preschool component and whether the School was required to pay for that component.

### *20 U.S.C. § 1415(e)(4)(D)*

■ The School contends that it sent the Danielses a letter on September 2, 1992, fifteen days prior to the due process hearing, which contained the following offer for Christopher's educational placement:

1. Special pre-school—2 half days per week;

2. Head Start—2 half days per week;

3. Occupational Therapy services;

4. Physical Therapy services;

5. Speech/Language services; and

6. Special transportation.

R. 64. The IDEA provides an exception to the rule providing for recovery of attorney fees in the following circumstance:

(D) No award of attorneys' fees and related costs may be made in any action or proceeding under this subsection for services performed subsequent to the time of a written offer of settlement to a parent or guardian, if—

(i) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than ten days before the proceeding begins;

(ii) the offer is not accepted within ten days;

(iii) the court or administrative officer finds that the relief finally obtained by the parents is not more favorable to the parents or guardian than the offer of settlement.

20 U.S.C. § 1415(e)(4)(D). The School contends that because the hearing officer ordered exactly what the School offered in its letter, an award of attorney fees is precluded under the above provision.

The trial court determined that the Danielses never received the September 2, 1992 offer of settlement and therefore 20 U.S.C. § 1415(e)(4)(D) did not preclude the attorney fee award. The trial court's findings of fact and conclusions of law on this issue follow:

7. The defendants have alleged that on September 2, 1992, an offer of settlement was delivered to the Daniels[es] through their counsel. No offer of settlement was received by the Daniels[es] or by their counsel prior to the administrative hearing conducted on September 17, 1992. No offer of settlement was placed into evidence or mentioned at the hearing of September 17, 1992. The defendants took the position at the hearing that they were not obligated to provide a regular education preschool program as part of Christopher Daniels' individual education plan and were not required to pay for the regular education program. The letter dated September 2, 1992, was first received by the Daniels[es] when it was attached to a letter to their counsel from the defendants' counsel of October 29, 1992 concerning the issue of attorney fees.

8. The letter dated September 2, 1992 offering settlement did not state that the school considered a regular education preschool program as a required component of an individual education plan for Christopher Daniels and did not state that the school system was obligated to pay for the regular education preschool program.

. . . .

21. The Daniels[es] did not receive an offer of settlement prior to the administrative hearing. The offer of settlement did not confirm the substantive rights which the Daniels[es] won through the administrative proceedings. The proposed offer of settlement did not *require* that the school system pay for the regular education preschool program. The offer of placement in Head Start in the letter of September 2, 1992 was an illusory offer because a contract did not exist between the Special Services Unit and Head Start prior to September 21, 1992. The Head Start program also had no vacancies at the time of the administrative hearing on September 17, 1992 according to testimony taken at the administrative hearing. The offer of settlement did not foreclose the possibility of litigation for the Daniels[es] and other children in every school year should the defendants continue to take the position that a regular education preschool program component was not an appropriate part of an individual education plan and that the defendants were not obligated to pay for the regular education preschool program. Even if the Daniels[es] had received the offer of settlement, they would have been substantially justified in rejecting it.

R. 222–27.

We agree with the trial court's conclusions. Even if we would determine that the Danielses received the letter, a proposition not backed by the evidence, the letter does not guarantee Christopher the opportunity for placement in a regular education program nor guarantee that the School would bear the cost of a regular education program. Be-

cause the Danielses accomplished more through the due process hearing than offered in the letter, 20 U.S.C. § 1415(e)(4)(D) does not apply.

The award of attorney fees is affirmed.

NAJAM, J., concurs.

RUCKER, J., dissents with separate opinion.

RUCKER, Judge, dissenting.

I respectfully dissent from that portion of the majority opinion which concludes that the Danielses were the prevailing parties at the due process hearing. At the conclusion of the May 20, 1992 case conference, the committee recommended the following services to the Danielses on Christopher's behalf: "Special Preschool two days per week, O.V.O. Headstart two days per week, O.T./P.T., speech services, and transportation." R. at 816.[4] Unwilling to accept the committee's recommendation the Danielses sought and obtained a due process hearing. Apparently the Danielses objected to the Head Start program and felt that the school should pay for transportation to and from Pope John, a regular preschool. After considering the evidence the hearing officer entered the following order: "[t]he dual placement in the special education preschool and the Head Start program is appropriate. The school will bear the costs of the program and related services." R. at 503. As I see it the only difference between the remedy afforded the Danielses by the case conference committee and the remedy afforded them by the hearing officer was the hearing officer's explicit pronouncement that the school district would pay the costs of the Head Start program. However, this is a non-issue because the Danielses never had to pay for the program in the first place. The record shows that the "O.V.O. Headstart program is made possible through federal grants and its services are provided at no cost to the students enrolled in that program." R. at 144 (Affidavit of Director of the Madison Area Special Services Unit). Further, the record also shows that during a May 29, 1992 case conference the committee informed Mr. Daniels that the Head Start program as well as all other services which the committee was recommending would be provided at no expense to the Danielses. R. at 142 (Affidavit of the Supervisor of Special Education).

I cannot agree with the majority's view that conflicting evidence presented by the school at the due process hearing is dispositive in this case. The question here is whether the Danielses succeeded on any significant issue in litigation, thereby achieving some of the benefit they sought in pursing the due process action. *See Kellogg v. City of Gary*, 562 N.E.2d 685, 714 (Ind.1990). In my opinion the answer is no. Apparently the Danielses' request for a due process hearing was motivated by their objection to Head Start. The Danielses wanted to send Christopher to a private preschool paid for by the school corporation. The School rejected this claim as did the hearing officer. Ultimately the Danielses received the same remedy from the hearing officer as they received from the case conference committee. Under the circumstances they cannot be considered prevailing parties. I therefore dissent and would reverse the trial court on this issue. In all other respects I concur with the majority.

**4.** The record shows that "O.V.O. Headstart" refers to the Ohio Valley Opportunity Headstart program, and O.T./P.T. refers to occupational and physical therapy.