METROPOLITAN SCHOOL DISTRICT
OF LAWRENCE TOWNSHIP,
Appellant–Defendant,

v.

M.S., a Minor, by Her Parent and Next
Friend, Cynthia Stancliffe,
Appellee–Plaintiff.

No. 49A02–0404–CV–358.

Court of Appeals of Indiana.

Dec. 8, 2004.

Jordan D. Church, Church Church Hittle & Antrim, Fishers, IN, Attorney for Appellant.

Dorene J. Philpot, Indianapolis, IN, Attorney for Appellee.

## OPINION

SHARPNACK, Judge.

Metropolitan School District of Lawrence Township ("School") appeals from the trial court's denial of its motion for summary judgment and the grant of a cross-motion for summary judgment filed on behalf of M.S. by her parents, Cynthia Stancliffe and Thomas Stancliffe (collectively, "the Parents").[1] The School raises one issue, which we restate as whether the trial court erred by finding that the Parents were the "prevailing party" in due process hearing relating to M.S.'s special education needs under the Individuals with Disabilities Education Act. We reverse and remand.[2]

 The relevant facts follow. The Individuals with Disabilities Education Act ("IDEA") requires participating states to provide a free and appropriate education to all disabled children as a condition of receiving federal assistance. *Evans v. Tuttle*, 613 N.E.2d 854, 857–858 (Ind.Ct. App.1993). Indiana is a participating state and, thus, subject to federal regulation. *Id.* at 858 (quoting Ind.Code § 20–1–6–4). The IDEA provides that education must be available to all disabled children be-

1. The complaint for attorney fees, which is the subject of the summary judgment order, was filed by Cynthia Stancliffe on behalf of M.S., but both Cynthia and Thomas Stancliffe were the petitioners in the underlying due process hearing. For purposes of this appeal, we will refer to the plaintiffs as both Cynthia and Thomas Stancliffe ("the Parents").

2. We direct the School's attention to Ind. Appellate Rule 46(A)(10), which provides that an appellant's "brief shall include any written opinion, memorandum of decision or findings of fact and conclusions thereon relating to the issues raised on appeal."

tween the ages of three and twenty-one, subject to certain exceptions. *Id.* In connection with the IDEA, a case conference committee[3] ("CCC") must be established to create an individualized education program[4] ("IEP") for each disabled student. *Id.* at 859.

M.S. is a nine-year-old child who qualifies for special education services in the School's district due to her multiple disabilities and communication disorder. M.S. does not communicate verbally and has cerebral palsy, spastic quadriplegia, and orthopedic conditions that prevent her from walking and significantly limit the use of her hands. She utilizes a wheelchair, and she uses a "stander" apparatus during the day to help strengthen her legs and torso muscles and to aid in digestion.

M.S. spent her first and second grade years in a general education classroom with the services of an instructional assistant. Prior to the beginning of the 2002–2003 school year, M.S.'s parents requested that M.S. be transferred to a new school within the School's district that offered a "Life Skills" classroom, which is a resource room for children with severe disabilities, and that M.S. repeat the second grade. The School's district administration approved those requests. While in the new school, M.S. divided her time between a general education classroom and a special education Life Skills classroom, where she received more specialized instruction. A CCC established an IEP for M.S., and at the Parents' request, the IEP included a provision that M.S. be put in the stander two times per day for one hour each session. During the school year, M.S.'s parents became concerned that M.S. was not spending as much time in a general education classroom and requested that M.S. be transferred back to her old school, but the School's district administration denied the transfer request. In January 2003, the Parents engaged in an unsuccessful mediation with the School.

On February 1, 2003, the staff at M.S.'s school became concerned that putting M.S. in the stander for a one-hour session was causing her knee caps to dislocate, and M.S.'s teacher of record informed M.S.'s parents that the CCC had made the decision to decrease M.S.'s time in the stander from one hour to thirty to forty-five minutes per session until the Parents could provide a note from a physician verifying that the full one-hour stander time was not injuring M.S. On February 12, 2003, M.S.'s parents withdrew M.S. from school and began to home school her. On March 31, 2003, M.S.'s parents provided the School

---

3. A "case conference committee" is "the group of persons described in 511 IAC 7–27–3, including parents and public agency personnel, who are responsible for the following:

(1) Reviewing evaluation data, identifying the existence of a disability, and determining a student's eligibility for special education and related services.

(2) Developing, reviewing, and revising a student's individualized education program.

(3) Determining the appropriate special education, related services, and placement for a student

and the setting or settings in which those services will be provided.

(4) Determining other matters, including the provision of a free appropriate public education, that are assigned to an IEP team by federal law or to a case conference committee by state law or any rule of the Indiana state board of education, including this article."

Ind. Admin. Code tit. 511, r. 7–17–10.

4. An "individualized education program" is defined as "a written document, developed by the case conference committee, that describes how a student will access the general education curriculum and the special education and related services needed to participate in the educational environment." Ind. Admin. Code tit. 511, r. 7–17–44.

with a physician's written statement authorizing M.S.'s time in the stander.

On February 11, 2003, the Parents requested a due process hearing with the Indiana Department of Education and alleged twenty-two violations of Indiana's special education regulations. The Parents alleged, among other things, that: the School had failed to provide a free appropriate public education for M.S.; the School had failed to place M.S. in the least restrictive environment based on her unique needs; the teachers and staff were inadequately licensed and trained in the areas of M.S.'s disabilities and needs; the School had failed to devise an appropriate IEP for M.S., had failed to follow several provisions of the IEP, had failed to distribute copies of M.S.'s IEP with teachers and staff responsible for implementing the IEP, and had failed to renew M.S.'s IEP within one year; the School had failed to conduct an evaluation and perform additional testing when requested by the Parents; the School had punished M.S. for actions and inactions that were manifestations of her disabilities; the School had ignored recommendations of the Parents and their experts regarding the educational and related need of M.S.; and the School failed to allow M.S. to participate in extra-curricular activities that were offered to non-disabled peers.

An independent hearing officer conducted a hearing and found the following four violations by the School: (1) the School failed to follow the provisions of M.S.'s IEP by failing to include the Parents in the CCC's decision to reduce M.S.'s time in the stander and by failing to adequately document whether M.S. was meeting her IEP goal relating to the stander during the period from August 19, 2002 to October 18, 2002; (2) the School failed to have one of M.S.'s general education teachers attend the CCC meeting on April 10, 2002; (3) the School failed to provide any evidence that it had made a copy of one of M.S.'s evaluation reports available to the Parents five instructional days prior to a CCC meeting; and (4) the School failed, by twelve days, to devise a new IEP within the one-year required time period. The hearing officer found that the violations were not "material" violations and that the School had not failed to provide M.S. with a free appropriate public education.

The hearing officer ordered the School to "circulate a memo to appropriate staff reminding them" that: (1) "[p]rogress towards the child's goals and objectives and personal care, when relevant, must be adequately documented [and r]easons for lack of data, for example, child's absence from class or completion of an objective should be noted in the child's records[;]" (2) "[t]here must be a general education teacher present at every case conference committee meeting if the child is or may be participating in the general education environment[;]" (3) "[t]esting must be completed and the parent notified that the report is ready no later than five (5) instructional days before a scheduled case conference committee meeting[;]" and (4) "[t]here must not be more than 12 months between annual case conference committee meetings." Appellant's Appendix at 78. M.S. did not appeal the hearing officer's order.

In July 2003, the Parents filed a complaint with the trial court, alleging that they were entitled to reimbursement of attorney fees pursuant to Ind. Admin. Code tit. 511, r. 7–30–4(p)[5] because they "had prevailed on some of the issues of

---

5. In their complaint, the Parents stated that they were entitled to attorney fees pursuant to Ind. Admin. Code tit. 511, r. 7–15–6(q), which is the former version of Ind. Admin. Code tit. 511, r. 7–30–4(p).

contention" in the due process hearing and because the hearing officer's order "changed the legal relationship between [M.S.] and the [School] and ordered changes in the school's policies and procedures." *Id.* at 31. Thereafter, the School filed a motion for summary judgment and argued that the Parents were not entitled to attorney fees because they had neither prevailed on any significant issue nor established any substantive right for M.S. and, thus, were not the prevailing party. In support of its summary judgment motion, the School designated the twenty-nine-page order that the hearing officer issued after the due process hearing. The Parents filed a cross-motion for summary judgment and argued that the School had denied M.S. a free appropriate public education because there were material procedural violations by the School. In support of their cross-motion for summary judgment, the Parents designated their complaint in which they sought attorney fees.

The trial court held a hearing on the motions and issued the following order, finding that the Parents were entitled to attorney fees:

\* \* \* \* \*

### III. Facts and Procedural History

M.S. is a special education student at the School. She suffers cerebral palsy and multiple physical ailments including spastic quadriplegia, as well as a significant communication disorder. She requires a wheelchair and a["]stander."

On February 11, 2003, Parent brought a due process hearing in the Indiana Department of Education in which she specified twenty-two (22) issues under Indiana Special Education Rules at 511 IAC 17–31 ("the Rules"). On June 2, 2003, the hearing decision was issued. It found violations on four (4) issues as follows:

a. School did not substantially comply with the child's [IEP] to have the child in a "stander" during two months of 2003. The hearing officer found; "There is a significant amount of data missing from the child's physical needs logs."

b. School failed to have one of the child's general education teachers at the [CCC] meetings on April 10, 2002.

c. School failed to provide evidence that a testing report was made available to the child's parents five days before a [CCC] meeting.

d. School failed, by twelve days, to devise a new [IEP] for the child within a year during October 2001–2002.

The hearing decision specifically found no failure to provide a "free and appropriate public education" under the Rules. But, the hearing officer ordered the School to "a memo to appropriate staff" to remind them of various requirements of the Rules related to the violations.

With respect to violations b., c., and d. above, the hearing officer further found: "The violations of statutory procedures found herein have not been *material* under the circumstances germane to this dispute." (emphasis supplied)

Furthermore, the hearing officer found the "stander" violation resulted from a "reasonably perceived imminent risk" by the School, that is, the School's belief that the stander may be harmful to the child. It is not disputed that the School agreed with the Parent that the child's IEP should include the stander. The School acted unilaterally to keep the child out of the stander for a significant amount of time, over a two-month period, until the Parent could provide a medical opinion for its use. When such medical authorization was provided, the School then complied with the IEP and

the stander was fully implemented. The hearing officer found this violation to be not "material" since the School's "reasonably perceived imminent risk" took precedence over "procedure."

On July 2, 2003, Parent brought this action seeking attorney's fees in the amount of $12,076.15 under 511 IAC 7–30–6. On August 27, 2003, the School field [sic] its motion for summary judgment arguing the Parent was not a "prevailing party" and not eligible for fees since the hearing decision was adverse to parent on 18 of 22 issues. On September 3, 2003, Parent filed her cross-motion for summary judgment.

## IV. Law

Federal standards from the Individual's [sic] with Disabilities Education Act govern the special education needs of children in Indiana public schools. 20 U.S.C. 1400 *et. seq.;* I.C. 20–1–6–4; *Madison Area Educational Special Unit v. Daniels,* [678 N.E.2d 427 (Ind. Ct.App.1997), *reh'g denied, trans. denied.*] Accordingly, schools are required to conform to the provisions of the Rules at 511 IAC 7–31 under the Indiana Department of Education. Most importantly, public schools are required to provide a "free appropriate public education" to disabled students. 511 IAC 7–18–2.

A court may award attorney's fees to a parent who is the "prevailing party" in a due process hearing under the Rules. 511 IAC 7–30–4(p). Under Indiana law, the determination of a "prevailing party" in special education cases is the same under 42 U.S.C. Section 1988 and the announced standard of the United States Supreme Court in *Texas State Teachers v. Garland Independent School District,* 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (19[8]9). *Id.* at 341; *Kellogg v. City of Gary,* [562

N.E.2d 685 (Ind.1990).] A plaintiff may be considered a "prevailing party" if they [sic] succeed on any significant issue in litigation which orders some of the benefits the party sought in bringing the suit. The degree of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the *size* of a reasonable fee, but not to *eligibility* for a fee amount at all. *Texas State Teachers v. Garland, supra.* at 789, 109 S.Ct. 1486. If a court order alters the legal relationship between the parties by modifying a defendant's behavior in a way that directly benefits plaintiff, then the plaintiff is a "prevailing party." *Farrar v. Hobb[y],* 506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). If the benefits are merely technical or de minimus, then a plaintiff cannot be seen as prevailing. *Zak v. Cambridge School Committee,* 44 F.Supp.2d 395 (D.Mass. 1999).

Under *Madison Area Educational Special Unit v. Daniels, supra.,* parents are not automatically precluded as "prevailing" parties because they did not succeed in showing a failure to provide a "free appropriate public education." Rather, in *Board of Education v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), the United States Supreme Court held violations in school disability cases can also be shown if they are *material and procedural* (emphasis supplied).

## V. Analysis

### *Plaintiff May "Prevail" On A Single Issue*

There is no authority for the Court to preclude Parent as a "prevailing party" based on a scorecard of issues. Instead, the law requires almost the opposite—a determination of the amount of fees ac-

cording to the amount of success, if any. *Texas State Teachers v. Garland, supra.* at 791, 109 S.Ct. 1486. The degree of success is relevant to the *amount* of fees, within the court's discretion, but not the *eligibility* for fees. *Id.*

There is no appeal of the hearing decision finding no failure to provide a "free appropriate pub[l]ic education." So, the eligibility and amount of fees is determined by the significance of the "material" procedural issues decided in Parent's favor, and the extent to which the School's behavior was modified. *Id.; Madison Area Educational Special Unit v. Daniels, supra.*

### *Plaintiff Prevailed On A Significant Issue Which Modified School's Behavior*

First of all, the Court finds the physical needs of the child are "significant," and beyond "procedural." The hearing decision found the School unilaterally altered the physical care of the child contrary to the IEP with no medical authorization. The School also failed to compile required data regarding child's physical needs, that is, the requirement for the child to be in the "stander." The hearing officer's conclusion that the "reasonably perceived imminent risk" justified such action may be logical in emergency circumstances, or to explore immediate alternatives. But such indefinite unilateral action for two months was not justified by any imminent risk. The hearing decision directly modified the School's behavior to provide the "stander" to the child, and document the log as required, when it found the School's actions violated the Rules. This directly benefited the child and Parent. On this issue alone, the Court finds Parent is entitled to some award of attorneys' fees as a prevailing party un-

der the law. *Id.; Farrar v. Hobb[y], supra.*

The hearing decision further found the School violated the Rules on two occasions related to [CCC] meetings. In addition, the hearing decision found the School violated the Rules by missing a deadline to devise a new IEP for the child by twelve days. However, the hearing decision correctly found these to be procedural matters and found no "material" violations. Therefore, they are not considered in the determination of attorneys' fees for Parent as a prevailing party.

### *Reasonable Attorneys' Fees*

The court reviews the designated attorneys' fees statement attached to Parent's verified complaint. Although all the fees appear well-founded, relevant fees and expense related to the due process hearing approach $10,000. The Court finds reasonable fees for the amount of success in this action for a prevailing party should be fifty percent (50%) of such fees and expenses, or Five Thousand Dollars ($5,000.00).

### VI. Conclusion

Regardless of the number of claims upon which Parent sought relief, the amount of attorneys' fees is determined by any amount of success.

For purposes of awarding attorneys' fees, Parent is prevailing party on one issue that was significant, modified School's behavior, and directly benefited the child and Parent.

Reasonable attorneys' fees for Parent are Five Thousand ($5,000.00) Dollars.

### VII. Order

Judgment entered for Plaintiff in the amount of Five Thousand Dollars ($5,000.00).

*Id.* at 5–11.

The School then filed a motion to correct error, arguing that the trial court's conclu-

sion that the stander issue was significant because the School had taken an "indefinite unilateral action for two months [that] was not justified by any imminent risk" was not supported by the designated evidence. *Id.* at 138–139. The School argued that it did not keep M.S. out of the stander for two months; instead, it argued that "at or near the same time the school took action in light of a 'reasonably perceived imminent risk[,]' the parents withdrew the student from school." *Id.* at 139. The School also argued that even if the stander issue could be considered to be "significant," M.S. was not entitled to attorney fees because "prevailing in the stander issues did not achieve any of the benefits sought by the parents by filing the action." *Id.* at 140. The trial court denied the School's motion and issued an order, which provided:

\* \* \* \* \*

1. The Hearing Officer's record below shows [that the School] unilaterally kept the child out of the "stander" for an indefinite time, that is, unless or until the parents produced medical evidence for its necessity. The parents produced such evidence two months later.

2. The record further shows [the School's] action is contrary to the child's [IEP], and [the School] failed to conduct a [CCC] meeting showing any justification for change.

3. The Hearing Officer accepted [the School's] rationale—that the action was justified by a "reasonably perceived imminent risk"—but also found [the School] previously violated the law by failing to document the times when the stander was actually used, or not, during another two-month period. ("The District has not established that it has substantially complied with the 'stander' goal for the period of August 19, 2002 to October 18, 2002.")

4. The Court finds that physical needs of the child are a "significant" issue, [M.S.] prevailed · on such significant issue, and the Hearing Officer's decision modified the School's behavior for the child's benefit. Therefore, [M.S.] is a prevailing party entitled to reasonable attorneys' fees determined by the amount of her success.

5. The Court finds no prejudicial or harmful error on any issues raised by [the School], or otherwise.

*Id.* at 147–148.

■ The sole issue is whether the trial court erred by finding that the Parents were the "prevailing party" in a due process hearing relating to M.S.'s special education needs under the Individuals with Disabilities Education Act. Our standard of review for the grant of a motion for summary judgment is well settled. Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind.2001). The standard of review is not altered by cross-motions for summary judgment on the same issues. *Indiana Ins. Co. v. Am. Cmty. Servs., Inc.*, 718 N.E.2d 1147, 1152 (Ind.Ct.App.1999). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Mangold*, 756 N.E.2d at 973. When material facts are not in dispute, as is the case here, our review is limited to determining whether the trial court correctly applied the law to the undisputed facts. *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 39 (Ind.2002). We review such pure questions of law de novo. *Id.* Review of a summary judgment motion is limited to those materials designated to the trial court. *Mangold*, 756 N.E.2d at 973.

The School argues that the trial court erred by awarding attorney fees because the Parents were not the prevailing party in the due process hearing. Ind. Admin. Code tit. 511, r. 7–30–4(p) provides:

A parent represented by legal counsel during the proceedings of a due process hearing ... is entitled to reimbursement for legal fees if the parent ultimately prevails. Determination of which party prevails and the amount of reimbursement shall be determined by negotiation between the parent and the public agency. If agreement cannot be reached, either party may proceed to civil court for resolution under section 6 of this rule. Mediation, as described in section 1 of this rule, is not available for resolution of legal fees.

Thus, in order to get a reimbursement of attorney fees, the Parents needed to show that they were the "prevailing party" in the due process hearing.

■ In *Kellogg v. City of Gary*, 562 N.E.2d 685, 714 (Ind.1990), our supreme court adopted the definition of "prevailing party" established in *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989). While *Garland* was decided under 42 U.S.C. § 1988, the definition of prevailing party under the IDEA and 42 U.S.C. § 1988 is the same. *Madison Area Educ. Special Servs. Unit v. Daniels*, 678 N.E.2d 427, 429 (Ind.Ct.App.1997), *reh'g denied, trans. denied.* In cases where a plaintiff enjoys only limited success, the plaintiff may be considered the "prevailing party" for attorney fees purposes if he "succeed[s] on any significant issue in the litigation which achieves some of the benefit the [plaintiff] sought in bringing the suit." *Kellogg*, 562 N.E.2d at 714 (quoting *Garland*, 489 U.S. at 789, 109 S.Ct. at 1492). "[A] plaintiff [must] receive at least some relief on the merits of his claim before he

can be said to prevail." *Garland*, 489 U.S. at 792, 109 S.Ct. at 1493. "Thus, at a minimum, to be considered a prevailing party ... the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Id.* "Where such a change occurs, the degree of the plaintiff's success goes to the reasonableness of the award ... not to the availability of a fee award[.]" *Garland*, 489 U.S. at 793, 109 S.Ct. at 1494. Where a hearing officer "does not state that one party prevailed ... [or] specifically designate the issues addressed or the prevailing party on each issue, ... it [is] incumbent upon the trial court to determine the prevailing party based on a review of the hearing officer's order and the evidence presented at the due process hearing." *Daniels*, 678 N.E.2d at 431.

After the due process hearing, the hearing officer found in favor of the Parents on the stander issue. The hearing officer found that the School had failed to follow the provisions of M.S.'s IEP by failing to include the Parents in the CCC's decision to reduce M.S.'s time in the stander and by failing to adequately document whether M.S. was meeting IEP goal relating to the stander during the period from August 19, 2002 to October 18, 2002. The hearing officer concluded that the School's failure to include the Parents in the decision to decrease M.S.'s time in the stander from one hour to thirty to forty-five minutes did not constitute a "material violation." Appellant's Appendix at 69. Specifically, the hearing officer concluded:

Had it not been for the reasonably perceived medical emergency, the failure of the [School] to include the parents in a CCC decision regarding the reduction of the child's time in the "stander" would have been a violation that might lead to arbitrary and erroneous decision making

and therefore a material violation. When a choice has to be made between CCC procedure and the abatement of a reasonably perceived imminent risk to the child's physical well-being, the latter consideration must certainly take precedence.

*Id.* at 68–69. In relation to the stander issue, the hearing officer ordered the School to "circulate a memo to appropriate staff" reminding them that "[p]rogress towards the child's goals and objectives and personal care, when relevant, must be adequately documented." *Id.* at 78.

In its summary judgment order, the trial court found that the School "acted unilaterally to keep the child out of the stander for a significant amount of time, over a two-month period, until the Parent could provide a medical opinion for its use" and that once "such medical authorization was provided, the School then complied with the IEP and the stander was fully implemented." *Id.* at 7. The trial court also found that "the physical needs of the child are 'significant,' and beyond 'procedural'" and that "the hearing decision directly modified the School's behavior to provide the 'stander' to the child" and concluded that the Parents were the prevailing party entitled to attorney fees. *Id.* at 9–10.

The School argues that the trial court erred by finding that the Parents were the prevailing party because the stander issue was not significant and even if it could be considered significant, the Parents did not achieve any of the benefits sought in bringing the due process suit. The School further contends that the trial court misinterpreted evidence from the due process hearing and wrongly concluded that the School took unilateral action for two months to keep M.S. out of the stander. We agree.

■ The designated evidence does not support the trial court's determination that the School kept M.S. out of the stander for two months. The designated evidence shows that: (1) on February 1, 2003, after having concern that putting M.S. in the stander for one hour per session was causing her knee caps to dislocate, M.S.'s teacher of record informed M.S.'s parents that the CCC had made the decision to decrease M.S.'s time in the stander from one hour to thirty to forty-five minutes per session until the Parents could provide a note from a physician verifying that the full one hour stander time was not injuring M.S.; (2) on February 11, 2003, the Indiana Department of Education received the Parents' request for a due process hearing; (3) on February 12, 2003, M.S.'s parents withdrew M.S. from school and began to home school her; and (4) on March 31, 2003, M.S.'s parents provided the School with a physician's written statement regarding M.S.'s time in the stander. Thus, the designated evidence shows that for the approximately two-week period that M.S. was attending school from February 1 to February 11, the School reduced M.S.'s time in the stander from one hour to thirty to forty-five minutes. However, the designated evidence does not indicate that the School kept M.S. out of the stander during that two-week period. Furthermore, after the Parents withdrew M.S. from school two weeks after being informed of the CCC's decision to decrease the stander time. Thus, the School had no control over whether M.S. was in the stander from February 12 to March 31 when the Parents provided the doctor's note.

More importantly, the designated evidence does not support a conclusion that the Parents succeeded on a significant issue that achieved some of the benefit they sought in bringing the due process action. The trial court concluded that the Parents were entitled to attorney fees on the stander issue because the physical

needs of the child were significant and because the Parents had achieved some benefit that the Parents sought in bringing the suit because the hearing decision "directly modified the School's behavior to provide the 'stander' to the child[.]" Appellant's Appendix at 9. While we acknowledge that success on an issue involving a child's physical needs has the potential to be significant, we cannot conclude that success on this issue, significant or not, achieved some of the benefit the Parents sought in bringing the due process action. The hearing officer's order from the due process hearing shows that the Parents' request for a due process hearing was motivated by their desire to have M.S. transferred to a school where she could spend more time in a general education classroom.[6] Furthermore, the hearing officer did not order the School to put M.S. back in the stander. The hearing officer only ordered the School to circulate a memo to appropriate staff reminding them that progress toward M.S.'s IEP goals needed to be adequately documented. Indeed, the evidence shows that prior to the due process hearing, the Parents had resolved the issue of whether M.S. would be put in the stander for one-hour increments when they complied with the School's request to provide a written assurance from a physician that the one-hour period in the stander was not injuring M.S. Therefore, we cannot say that the Parents achieved some of the benefit they sought in bringing the due process action. Thus, as a matter of law, the Parents were not a prevailing party entitled to reimbursement of attorney fees from the due process hearing. *See e.g., Garland,* 489 U.S. at 792, 109 S.Ct. at 1493 (noting that a plaintiff does not qualify as a prevailing party where the plaintiff's success on a legal claim can be characterized as purely technical or de minimis); *cf. Kellogg,* 562 N.E.2d at 716 (holding that the plaintiffs were the prevailing party where they had achieved the benefit they sought in bringing the action by materially altering an existing policy of the defendant). Accordingly, we must conclude that the trial court erred by denying the School's motion for summary judgment and by granting the Parents' cross-motion for summary judgment.[7]

For the foregoing reasons, we reverse the trial court's denial of the School's motion for summary judgment and the trial court's grant of the Parents' cross-motion for summary judgment, and we remand to the trial court with instructions to grant the School's motion for summary judgment.

Reversed and remanded.

BAILEY, J. and MAY, J. concur.

---

**6.** The hearing officer's order provides:

> At the [due process] hearing[,] the parents stated that they want the child to be in a general education environment with typical peers of an appropriate age with a full time Instructional Aide (IA) for the entire school day. A private school they contacted had agreed to such an arrangement. They believe that it is more important for the child to be happy and feel included than it is for her to make progress towards her academic goals.

Appellant's Appendix at 55.

**7.** The Parents request that we grant them appellate attorney fees, and we hereby deny that request. **(Appellee's Brief at 10–11)**