In the Matter of Kayla Lynn
HOOD, A Minor.

David VINEYARD, Petitioner–Appellant,

v.

Heather Elaine HOOD, Donna Hood, and
Allen Hood, Respondents–Appellees.

Court of Appeals of Tennessee,
Eastern Section.

June 10, 1996.

Charles M. Clifford, Maryville, for petitioner-appellant.

Robert M. Cohen, Maryville, Charles W. Burson, Attorney General & Reporter, and Jennifer Helton Small, Deputy Attorney General, for the State of Tennessee, for respondents-appellees.

*OPINION*

SUSANO, Judge.

In this case, David Vineyard seeks to legitimate and establish a parent-child relationship with his alleged daughter, Kayla Lynn Hood, who was born to Heather Elaine Hood (Mother) on November 8, 1994. Mother opposes Vineyard's attempt to legitimate the child on the ground that she has not consented to the child's legitimation.[1] Mother and her parents filed a motion to dismiss, which the juvenile court granted, holding, in effect, that a putative father has no avenue by which to legitimate his child, absent the mother's consent, under Tennessee's legitimation statutes. In so ruling, the court apparently relied upon T.C.A. § 36–2–202(c),[2] which provides as follows:

> *Nothing herein shall be construed to authorize a putative father to legitimate a child or to execute any voluntary acknowledgment of paternity without the consent of the mother of such child.*

---

1. According to the petition, Mother is a minor in the custody of her parents, respondents Donna L. Hood and Royce Allen Hood. According to the motion to dismiss, the maternal grandparents have been awarded temporary legal custody of the minor child, Kayla Lynn Hood. The mater-

nal grandparents also oppose Vineyard's attempt to legitimate the child.

2. T.C.A. § 36–2–202(c) is a codification of a part of Section 6 of Chapter 988 of the Public Acts of 1994, effective July 1, 1994.

(Emphasis added). Because Vineyard's issues on this appeal bring into question the validity of this code section, we directed the parties to serve copies of their briefs on the Attorney General, the Honorable Charles W. Burson, pursuant to the provisions of Rule 32, T.R.A.P.

General Burson has filed a written response regarding the validity of T.C.A. § 36–2–202(c), as it pertains to Vineyard's petition to legitimate his alleged child. In his response, he certified his conclusion that the statute "is unconstitutional to the extent that it allows an unmarried woman to prevent a putative father from legitimating his alleged biological child." Thus, the unusual posture of this case presents us, on the pleadings, with the question of the constitutionality of T.C.A. § 36–2–202(c).

## I

Our standard of review in a case such as this is set forth in *McClenahan v. Cooley*, 806 S.W.2d 767, 769 (Tenn.1991):

In light of the fact that this case was dismissed on a motion for judgment on the pleadings ... we are bound to treat as false all allegations of the Defendant, the moving party, which are denied, and as true all well-pleaded allegations contained in the pleadings of the Plaintiff, the opponent of the motion. See *Trigg v. Middle Tenn. Elec. Membership Corp.*, 533 S.W.2d 730, 732–33 (Tenn.App.1975). In other words, on an appeal from an order allowing a judgment on the pleadings, as in this case, all well-pleaded facts and all reasonable inferences drawn therefrom must be accepted as true. *Trigg* at 733 (citing *Darwin v. Town of Cookeville*, 170 Tenn. 508, 97 S.W.2d 838 (1936); *Rodgers v. Rodgers*, 53 Tenn. 489 (1871)). Conclusions of law are not admitted nor should judgment on the pleadings be granted unless the moving party is clearly entitled to judgment.

*Id.* We review the instant case with this standard in mind.

## II

The facts as set forth in Vineyard's petition are as follows. The child was born out of wedlock on November 8, 1994. Mother is an unmarried minor in the custody of her parents, respondents Donna and Allen Hood. Vineyard is the natural father, and Mother and her parents have acknowledged him as such. Mother has allowed Vineyard to visit with his child since her birth. Vineyard has offered support for the child, which has been accepted, and he is fully capable and willing to provide continuing support. Finally, Vineyard desires to establish a legal parent-child relationship with his daughter. Vineyard's petition requests a declaration that he is the child's biological father. He also seeks the setting of an equitable amount of child support; reasonable visitation rights; and that his daughter's name be changed to Kayla Lynn Vineyard. In other words, Vineyard seeks to legitimate his child.

The respondents argue that the Tennessee legitimation statutes do not allow a putative father to legitimate a child without the consent of the child's mother. The juvenile court, ostensibly[3] relying upon T.C.A. § 36–2–202(c), agreed and dismissed the petition.

## III

■ The language and effect of T.C.A. § 36–2–202(c) is clear: no putative father may legitimate his child without the consent of the child's mother, regardless of the circumstances. We now address the question of whether this rule passes constitutional muster under established principles of due process. The Attorney General takes the following position on this question:

that portion of the statute which allows an unmarried woman to prevent the putative father from filing proceedings to legitimate his child constitutes a denial of due process under both the Tennessee and United States Constitutions ...

We agree.

The United States Supreme Court examined the extent to which the Due Process Clause of the Federal Constitution protects a natural father's biological relationship with

---

3. The juvenile court did not state its reasoning in     the order dismissing the petition.

his child in *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). In *Stanley,* the Court struck down a statute creating an irrebuttable presumption that all unwed fathers are unfit parents, and mandating that children of unwed fathers would automatically become wards of the state upon the mother's death. The Court described the father's liberty interest in a relationship with his natural children as follows:

> The private interest here, that of a man in the children he has sired and raised, undeniably warrants deference and, absent a powerful countervailing interest, protection. It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children "come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic relationships."

> \* \* \* \* \* \*

> The rights to conceive and to raise one's children have been deemed "essential," *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923), "basic civil rights of man," *Skinner v. Oklahoma,* 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942), and "[r]ights far more precious . . . than property rights," *May v. Anderson,* 345 U.S. 528, 533, 73 S.Ct. 840, 843, 97 L.Ed. 1221 (1953).

*Stanley,* 405 U.S. at 651, 92 S.Ct. at 1212. Significantly, the Court made it clear that these rights extend to unwed fathers as well as those married: "Nor has the law refused to recognize those family relationships unlegitimized by a marriage ceremony." *Id.,* 405 U.S. at 651, 92 S.Ct. at 1213. The *Stanley* Court concluded that

> as a matter of due process of law, Stanley was entitled to a hearing on his fitness as a parent before his children were taken from him . . .

*Id.,* 405 U.S. at 649, 92 S.Ct. at 1211.

The nature, and boundaries, of the parental rights of an unwed father were further explored in the case of *Lehr v. Robertson,* 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983). *Lehr* recognized and held that an unwed father's constitutional rights in a relationship with his child are initially inchoate, and, before they gain due process protection, must be developed through the father's pursuit of such a relationship and his demonstration of parental responsibility by offering financial and emotional support of his child. The Court stated the following in this regard:

> When an unwed father demonstrates a full commitment to the responsibilities of parenthood by "com[ing] forward to participate in the rearing of his child," *Caban* [*v. Mohammed* ], 441 U.S. [380], at 392, 99 S.Ct. [1760], at 1768 [60 L.Ed.2d 297 (1979) ], his interest in personal contact with his child acquires substantial protection under the Due Process Clause. At that point it may be said that he "act[s] as a father toward his children."

> \* \* \* \* \* \*

> The significance of the biological connection is that it offers the natural father an opportunity that no other male possesses to develop a relationship with his offspring. If he grasps that opportunity and accepts some measure of responsibility for the child's future, he may enjoy the blessings of the parent-child relationship and make uniquely valuable contributions to the child's development.

*Lehr,* 463 U.S. at 261–62, 103 S.Ct. at 2993.

Tennessee jurisprudence also recognizes that an unwed father is entitled to due process protection of his parental rights under certain circumstances. In 1989, the Court of Appeals was faced with an issue similar to that at bar, and with comparable facts, in the case of *In re Adoption of Hutto,* 777 S.W.2d 353 (Tenn.App.1989). In *Hutto* the natural parents filed competing petitions in juvenile court—the father filed what amounted to a legitimation petition, and the mother and her husband filed a petition to adopt the child. The court stated the following:

> Appellants argue "the trial court lacked authority to order the child legitimated pursuant to the adversarial counterclaim of the natural father over the objection of the mother", and insist that *Matter of A,* 735 S.W.2d 232 (Tenn.App.1987); *Cooper v. Thompson,* 710 S.W.2d 944 (Tenn.App. 1985) and *Cunningham v. Golden,* 652

S.W.2d 910 (Tenn.App.1983) are authorities for their position. These cases are inapposite since the actions were, in effect, seeking a declaration of illegitimacy of a presumptively legitimate child having been born to a woman while married to another man. Appellants also argue the legitimation statutes do not contemplate an adversarial proceeding. This is correct insofar as the proceeding relates to the issue of paternity; however, the parties stipulated Fowler was the biological father of the child who was "not born in lawful wedlock". On these facts a biological parent may petition the court for an order of legitimation ...

*Id.* at 354. Applying the *Lehr* ruling and quoting that case at length, the *Hutto* court found that "from the inception, the natural father attempted to assume the role and obligations of a parent." *Id.* at 355. The court therefore affirmed the juvenile court's granting of the father's legitimation petition and denial of the adoption petition.

In the case of *Hawk v. Hawk*, 855 S.W.2d 573 (Tenn.1993), the Supreme Court examined parental rights under the Tennessee Constitution and concluded that

> Tennessee's historically strong protection of parental rights and the reasoning of federal constitutional cases convince us that parental rights constitute a fundamental liberty interest under Article I, Section 8 of the Tennessee Constitution.

*Id.* at 579. The Court noted that long-standing Tennessee law holds that "a parent is entitled to the custody, companionship, and care of the child, and should not be deprived thereof except by due process of law," quoting from *State ex rel. Bethell v. Kilvington*, 100 Tenn. 227, 236, 45 S.W. 433, 435 (1898); and that "[t]he relations which exist between parent and child are sacred ones ... The right to the society of the child exists in its parents," quoting from *In re Knott*, 138 Tenn. 349, 355, 197 S.W. 1097, 1098 (1917). Hawk at 577–78. Striking down the Tennessee Grandparents' Visitation Act as violative of these parental rights, the *Hawk* Court held:

> We hold that Article I, Section 8 of the Tennessee Constitution protects the priva-cy interest of these parents in their child-rearing decisions, so long as their decisions do not substantially endanger the welfare of their children. Absent some harm to the child, we find that the state lacks a sufficiently compelling justification for interfering with this fundamental right.

*Id.* at 582.

One year after *Hawk*, the Supreme Court revisited the parental rights issue, and after engaging in both federal and state constitutional analysis, found that the constitutional rights enumerated in *Hawk* extend to unwed fathers. The Court stated:

> Parents, including parents of children born out of wedlock, have a fundamental liberty interest in the care and custody of their children under both the United States and Tennessee Constitutions. *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Hawk v. Hawk*, 855 S.W.2d 573 (Tenn.1993). However, this right is not absolute and the State may interfere with parental rights if there is a compelling State interest.

  \*  \*  \*  \*  \*  \*

The Nales' position that this Court in *Hawk* limited the protection of parental rights to "an intact, nuclear family with fit parents" is untenable. The natural father prevailed in *In re Adoption of Hutto, supra*, in which the contest was between the father, who had filed a petition for legitimation, and the natural mother and her husband, who had filed a joint petition to adopt. This Court joins the Court of Appeals, which, in this case, stated:

> No reason occurs to this Court why a fit parent should be denied the privilege of parenthood merely because of birth out of wedlock. As previously stated, the denial of privilege of parenthood is based upon termination for unfitness.

*Nale v. Robertson*, 871 S.W.2d 674, 678 & 680 (Tenn.1994).

■ The cases discussed above clearly demonstrate that in the present case, petitioner Vineyard has a constitutionally protected right to attempt to create a legal parent-child relationship with his natural daughter. The logical avenue through which

he may accomplish this is by filing a petition to legitimate his child. The statute in question, T.C.A. § 36–2–202(c), grants the mother absolute veto power to prevent a putative father from even attempting to legitimate, and thereby establish a legal relationship, with his child. The mother may withhold her consent for any or no reason. Absent a legitimation proceeding, a putative father is, in the eyes of the law, a stranger to his own child, unable to attempt to develop his inchoate constitutional rights by demonstrating a commitment to fatherhood. Under established principles of due process, the state cannot mandate this result without demonstrating a compelling interest. This it has failed to do. The Attorney General has acknowledged as much.

### IV

■ We find that the statute is constitutionally infirm under equal protection principles as well. The Attorney General concurs with this conclusion, citing *Caban v. Mohammed,* 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979) as his analytical basis. The *Caban* Court was presented with a statute authorizing an unwed mother to block the adoption of her child by withholding consent, but giving the unwed father "no similar control over the fate of his child, even when his parental relationship is substantial." *Id.,* 441 U.S. at 386–87, 99 S.Ct. at 1765.

The Court found it "clear that [the statute] treats unmarried parents differently according to their sex." *Id.,* 441 U.S. at 388, 99 S.Ct. at 1766. Rejecting the state's contention that the statute bore a substantial relation to the interest in providing adoptive homes for illegitimate children, the Court said the following:

> In sum, we believe that [the statute] is another example of "overbroad generalizations" in gender-based classifications ... The effect of New York's classification is to discriminate against unwed fathers even when their identity is known and they have manifested a significant paternal interest in the child.

*Id.,* 441 U.S. at 394, 99 S.Ct. at 1769 [citations omitted].

The statute in the present case is analogous to the statute in *Caban* in that it gives the unwed mother certain authority, *i.e.,* the authority to block a legitimation petition, but affords the unwed father no such opportunity. We find it creates an improper gender-based classification without substantially furthering an important governmental objective, and thus violates the Equal Protection Clause of the United States Constitution, under the principles set forth in *Caban.*[4]

The Tennessee Supreme Court has consistently held that two provisions of our Tennessee Constitution, Article I, Section 8 (the "law of the land" clause),[5] and Article XI, Section 8,[6] "confer the same protections as does the Fourteenth Amendment to the United States Constitution." *Brown v. Campbell County Bd. of Ed.,* 915 S.W.2d 407, 413 (Tenn.1995); *Davis v. State,* 912 S.W.2d 689, 696 (Tenn.1995); *State v. Tester,* 879 S.W.2d 823, 827–28 (Tenn.1994); *Tennessee Small School Systems v. McWherter,* 851 S.W.2d 139, 152 (Tenn.1993). Consequently we hold the statute unconstitutional under

---

4. We do not believe our holding necessarily conflicts with the holding in *In the Matter of A (Cline v. Drew),* 735 S.W.2d 232 (Tenn.App.1987), a case relied upon by the appellees. That case involves very different facts from those now before us. We do not find it necessary to reach the issues raised by the factual pattern in *In the Matter of A.*

5. Tenn. Constit. Article I, Section 8 provides that

no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land.

6. Tenn. Constit. Article XI, Section 8 provides:

The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals rights, privileges, immunitie[s], or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law.

these Tennessee constitutional provisions as well.

For the aforementioned reasons, we hold unconstitutional that part of T.C.A. § 36–2–202(c) which purports to disallow a putative father from attempting to legitimate his child without the mother's consent, on both due process and equal protection grounds. The order of the juvenile court dismissing Vineyard's petition is vacated. This case is remanded for such further proceedings as may be necessary, consistent with this opinion.

Costs on appeal are taxed and assessed to the appellees.

GODDARD, P.J., and McMURRAY, J., concur.