**Jack Michael WALKER, Jack L. Walker and Stella Walker, Appellants,**

v.

**Jennifer Renee CAMPBELL and Kevin Eugene Campbell, Appellees.**

No. 17A03–9806–CV–279.

Court of Appeals of Indiana.

May 24, 1999.

Rehearing Denied Aug. 5, 1999.

J. Bryan Nugen, Auburn, Indiana, Attorney for Appellants.

Robert J. Hardy, Thomas & Thomas, Waterloo, Indiana, Attorney for Appellees.

## OPINION

BAILEY, Judge

### Case Summary

Appellants Jack Michael Walker ("Father"), and Jack L. and Stella Walker ("Grandparents") appeal the granting of the petition for the adoption of Father's natural son filed by Jennifer Renee and Kevin Eugene Campbell, the child's mother and her husband ("the Campbells"). We reverse.

### Issue

The dispositive issue may be restated as whether Indiana's adoption statutes which have operated to establish Father's irrevocable, implied consent to the adoption, without benefit of notice or hearing, are violative of Father's constitutional due process rights as applied under the present circumstances where Father has made regular and substantial child support payments and has exercised, and has attempted to exercise, regular visitation with the child.[1]

### Facts

The Campbells have accepted Father's statement of the facts as set forth in his brief. (Appellee's brief at 2). Father has characterized the Campbells' conduct in procuring this adoption as a covert adoption by ambush. (R. 87, 90).

The facts in the light most favorable to Father, reveal that the child who is the subject of this dispute was born out of wedlock on November 29, 1991. (R. 9). Jennifer Renee Campbell is the child's natural mother ("Mother"). (R. 10). Father is the child's natural father. (R. 10). The child's birth certificate names Father as the child's natural father. (R. 55). The child was given Father's last name. (R. 23).

Father's paternity has never been established by formal court proceedings or otherwise. (R. 10). Nor had Father registered his paternity with the Putative Father Registry before these proceedings were initiated. (R. 56).

Nevertheless, Father and Grandparents exercised regular visitation with the child. (R. 26, 45, 91, 93). Father also paid child support to Mother in the amount of $60.00 per week until July 11, 1997. (R. 23). At that point, however, Mother destroyed the check representing Father's July 19, 1997, payment and indicated that she would no longer accept payments. (R. 23). The Campbells rebuffed all further attempts of Father and Grandparents to exercise visitation with the child. (R. 23, 26).

Shortly afterward, on October 23, 1997, the Campbells filed a petition to adopt the child. In this petition they alleged:

> That the natural father of said child is [Father] but that his consent is not required pursuant to:

---

1. In *Adoptive Parents of M.L.V. v. Wilkens*, 598 N.E.2d 1054, 1058–59 (Ind.1992), our supreme court held that Indiana's adoption statutes which provide that an unwed mother may automatically veto an adoption while an unwed father must take affirmative steps to perfect that right were not violative of the Equal Protection Clause. *But see, Caban v. Mohammed*, 441 U.S. 380, 389–95, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979) (New York statutory scheme which permitted an unwed mother to block an adoption by withholding consent but did not permit an unwed father to do so violated equal protection). The *M.L.V.* court did not address the sufficiency of due process protection provided by the Indiana statutory scheme as analyzed in the present case.

(a) I.C. 31–3–1–6(g)(1) for the reason that the said [Father] has, for a period in excess of one (1) year, without justifiable cause, failed to communicate with said child when he was fully able to do so.

(b) I.C. 31–3–1–6(g)(2) for the reason that said child was born out of wedlock and his paternity has not been established by court proceedings.

(R. 10). The code sections cited in this pleading had been repealed at the time the petition was filed. P.L.1–1997 § 157. Although the pleading did not comply with the formalities prescribed by Ind. Trial Rule 11 for verifications, the signatures of the Campbells were notarized. (R. 11).

Even though the Campbells had been aware of Father's whereabouts at all times and that he could be contacted through Grandparents, the Campbells filed an "Affidavit in Support of Service by Publication." (R. 14, 45, 87). In this affidavit, the Campbells swore upon their oath that:

the natural father of the child ... is [Father], and that his whereabouts are unknown ...

(R. 14). The published notice provided Father read as follows:

Notice is hereby given to [Father] that [the Campbells] have filed a Petition for Adoption of [the child], and that said petition will be heard by the DeKalb Circuit Court and the judge thereof on the 29th day of December, 1997, at 11:45 A.M. If [Father] does not appear in person·or by counsel and file a response to said Petition for Adoption by such time, said petition will be heard in his absence and he will be considered in default and that said adoption may be granted by the Court.

(R. 17). This notice was published in the local newspaper on October 30th, November 6, and November 13, 1997. (R. 18).

Father retained an attorney who filed an "Objection to the Adoption" on December 24, 1997, within the time prescribed by the notice published by the Campbells. (R. 23).

Father's attorney alone appeared for the December 29, 1997, hearing. (R. 6). Accordingly, the proceedings were continued. (R. 6).

On February 6, 1998, Father filed a verified petition to establish paternity in the present action. (R. 29). Father also registered his paternity in the Putative Father Registry administered by the Indiana State Department of Health. (R. 56). Grandparents also filed their "Verified Petition to Establish Grandparental Visitation and Request for Hearing" on February 6, 1998. (R. 26). Father and Grandparents are represented by the same attorney. (R. 26, 29).

On March 6, 1998, after the Campbells discovered that they had cited repealed code sections in their original petition, they filed an amended petition which read in pertinent part as follows:

A. The natural father of said child is [Father] but that his consent is not required pursuant to: I.C. 31–19–9–8(1) in that he abandoned and/or deserted said child for a period of at least six (6) months immediately preceding the filing of the petition for adoption.

B. He failed for a period of one (1) year without justifiable cause to communicate significantly with the child when able to do so.

C. He is the biological father of the child born out of wedlock but his paternity had not been established by a Court proceeding other than the adoption proceeding, nor had he executed a paternity affidavit pursuant to I.C. 16–37–2–2.1.

(R. 38).

■ On May 1, 1998, the trial court heard oral arguments made by the opposing attorneys on the issue of whether Father's objection to the adoption proceedings should be dismissed. (R. 82, 83). Of the parties, only Father's mother, Stella Walker, appeared in person. (R. 82). No evidence was taken at the hearing. (R. 70).[2]

■ The trial court overruled Father's objection to the adoption, finding that Father

---

2. Although no evidence has yet been submitted in the present case, the facts as accepted by the Campbells suggest that their pleadings are permeated with fraudulent misrepresentations regarding Father's relationship with the child and could be stricken as sham and false under Ind. Trial Rule 11. *See Cua v. Ramos,* 433 N.E.2d 745, 752 (Ind.1982) (trial court has discretion to

was not entitled to notice of the adoption proceedings, nor was his consent required. (R. 73). The trial court ruled that Father had irrevocably and impliedly consented to the adoption by operation of IND.CODE § 31-19-9-1. (R. 73).[3] Accordingly, the trial court granted the adoption over Father's objection. (R. 73, 75). The trial court also denied Grandparents' petition for visitation. (R. 75). This appeal ensued.

## Discussion and Decision

### I. Agreement Regarding Visitation— Mootness Doctrine

■ During the pendency of this appeal, Father and Grandparents filed a pleading in this court which alleged in pertinent part as follows:

> Satisfactory settlement regarding visitation has been reached between the parties, thereby making further appeal effort unnecessary.

(Appellant's motion filed February 8, 1999). Ordinarily, we will dismiss an appeal upon motion where the parties have settled their dispute by compromise. *See Felzien v. Felzien,* 137 Ind.App. 435, 209 N.E.2d 524, 525 (1965).

■ The motion describes a "settlement regarding visitation" but does not address the underlying issues in this appeal, namely, whether Father was entitled to notice of the adoption proceedings and whether Father's consent was required. These core issues remain intact because an agreement to permit a putative father to exercise visitation with his child after the child has been adopted by another is entirely unenforceable. *See Matter of Adoption of Topel,* 571 N.E.2d 1295, 1298 (Ind.Ct.App.1991). Thus, the purported settlement regarding visitation does not, as a matter of law, confer any right, nor does it resolve any issue now before the court.[4]

---

strike false pleadings). Moreover, assuming that the Campbells' pleadings in support of their petition for adoption are permeated with fraud, they have run a substantial risk that the adoption in the present case could be set aside on the basis that the Campbells engaged in an unconscionable plan or scheme to work a fraud upon the court. *See* Ind. Trial Rule 60(B)(3). Indiana courts have overturned adoptions obtained through fraud. *See Caley v. Lung,* 257 Ind. 116, 271 N.E.2d 891, 892–93 (1971); *Matter of Paternity of K.M.,* 651 N.E.2d 271, 277 (Ind.Ct.App. 1995); *In re Paternity of Tompkins,* 542 N.E.2d 1009, 1014 (Ind.Ct.App.1989); *But see, M.L.V.,* 598 N.E.2d at 1057 (that putative father's consent to an adoption may have been obtained through fraud was of no moment where father's consent was not required under the adoption statutes).

Additionally, assuming that the Campbells' pleadings are permeated with fraud, they have in no way demonstrated substantial compliance, much less the strict compliance required, to effect an adoption under the procedures prescribed by Indiana's adoption statutes. *See Matter of Paternity of Baby Girl,* 661 N.E.2d 873, 878 (Ind. Ct.App.1996) (adoption set aside where prospective adoptive parents failed to substantially comply with the procedures prescribed by the adoption statutes); *Petition of Gray,* 425 N.E.2d 728, 730 (Ind.Ct.App.1981) (adoption set aside where the prospective adoptive parents had made no meaningful attempt to comply with the prescribed procedural steps to obtain an adoption, had provided the natural parent with inadequate notice, and made no showing that natural parent

had violated her natural and legal obligations to the child), *trans. denied.*

Finally, as noted above, the Campbells put Father on notice that his right to object to the adoption proceedings would expire on December 29, 1997. (R. 17). Thus, the Campbells could be estopped from denying the efficacy of Father's objection to the proposed adoption filed within the time prescribed by the Campbells. *See Shewmaker v. Etter,* 644 N.E.2d 922, 931 (Ind.Ct.App. 1994) (party is estopped from assuming a position in a legal proceeding inconsistent with one previously asserted), *adopted,* 659 N.E.2d 1021, 1030; *Baby Girl,* 661 N.E.2d at 878 (adoption set aside where the notice provided by prospective adoptive parents affirmatively misled Father regarding the steps he needed to take to preserve his rights).

Our resolution of the present case obviates the need to discuss these matters. We nevertheless have recorded our condemnation of the practice of filing false pleadings and note that we will simply not tolerate any unconscionable scheme to use the courts to deprive persons of their rights. *See Matter of R.L.W.,* 643 N.E.2d 367, 370 (Ind.Ct.App.1994) (sanctions imposed where a natural mother refused to respond to natural father's petition to establish paternity).

3. Trial court findings entered in conjunction with summary proceedings, while helpful, are merely advisory. *See State of Indiana Department of Natural Resources v. Hensley,* 661 N.E.2d 1246, 1250 n. 1 (Ind.Ct.App.1996).

4. The parties' visitation agreement cannot constitute an enforceable "postadoption contact privi-

The motion also requests "all other just and proper relief." (Appellant's motion filed February 8, 1999). It would be both unjust and improper to dismiss this appeal based on an illusory promise of visitation.

■ Moreover, although an appeal will ordinarily become moot when it is no longer 'live' or when the principal questions in issue have ceased to be matters of real controversy between the parties, we will nevertheless address the issues raised when the action involves a matter of great public interest and affects the public generally. *Sowers v. Laporte Superior Court,* 577 N.E.2d 250, 251 n. 1 (Ind.Ct.App.1991). Under the public interest exception to the mootness doctrine, we will decide an appeal despite its apparent mootness where the issue raised is of great public importance and is likely to recur. *Board of School Trustees v. Barnell,* 678 N.E.2d 799, 802 (Ind.Ct.App.1997) (the issue of whether certain statutory procedures satisfied due process was a matter of great public importance which would be resolved despite mootness); *Evans v. Tuttle,* 613 N.E.2d 854, 857 (Ind.Ct.App.1993).

■ The issues and rights at stake in the present case with respect to the interpretation of Indiana's statutes governing parent-child relationships are of monumental importance in the advancement of the best interests of Hoosier children and families. Quite simply, the present circumstances compel us to determine whether Indiana's adoption statutes as applied here violate the constitutional due process rights of a putative father who has grasped the opportunity and responsibility of acting as father toward his child through the payment of regular and substantial support and the exercise of regular visitation. On remand, Father and Grandparents may yet abandon their claims. But even if Father and Grandparents should re-

linquish their rights with respect to this particular child, we would address the issues in this appeal under the public interest exception to the mootness doctrine.

## II. Preservation of Constitutional Error

■ As an additional preliminary matter, we note that it is questionable whether Father has adequately raised or preserved the constitutional due process violation upon which this decision rests. However, again, the great public importance attached to this case has compelled us to decide this case under the following rationale:

> [w]hen we deem it necessary, we may raise a fundamental issue sua sponte, although issues not raised or adequately briefed are normally treated as waived.... 'The rule forbidding the discussion of points not originally suggested by appellant is made for the protection of the court, and only operates to excuse the court from considering questions that are not shown to have any material bearing upon the rights of the parties. Notwithstanding the failure of counsel to present the question, the court may consider and decide a question presented by the record, and may go outside the briefs of counsel for reasons upon which to base the decision, in order to do justice to the parties.' We are not required to close our eyes to that which is apparent on the record. Were we so limited, we would be frequently in the unhappy situation of 'lending tacit approval to [precedent] palpably bad on its face, and this could only result in confusing the law and misleading the profession.' We are here confronted with such a situation, and must discuss the issue we raise because of it.

*Campbell v. Vencel,* 594 N.E.2d 807, 809–10 (Ind.Ct.App.1992) (first internal citation from

leges" agreement because such privileges may only be granted to a birth parent who has:
 (1) consented to the adoption; or
 (2) voluntarily terminated the parent-child relationship.
IND.CODE § 31–19–16–1. Additionally, such privileges may only be granted at the time an adoption decree is entered upon court approval. *Id.;* IND.CODE § 31–19–16–2(2).
 In the present case, Father neither consented to the adoption nor voluntarily terminated the

parent-child relationship. Also, the purported agreement was entered into after the adoption was final at a point when the trial court would have lacked jurisdiction to approve it. *See Southwood v. Carlson,* 704 N.E.2d 163, 165 (Ind.Ct. App.1999) (noting that it is well-settled that the trial court is deprived of further jurisdiction over a case once the record is filed with the clerk of the Supreme Court and Court of Appeals).

*White v. White,* 208 Ind. 314, 196 N.E. 95, 96 (1935); second internal citation from *L.S. Ayres & Co. v. Hicks,* 220 Ind. 86, 41 N.E.2d 195, 196 (1942)), *pertinent portion summarily affirmed,* 604 N.E.2d 601, 602.

### III. Reconciliation of the Statutes Governing Parental Rights

Many competing rights and responsibilities, along with the public policies attendant to those interests, converge and compete in the present case. Included in the rights and responsibilities implicated here are those related to adoption, paternity, and the termination of parental rights. *See Topel,* 571 N.E.2d at 1298 (decree of adoption effects the termination of the parent-child relationship between the putative father and the child). Thus, inevitably, the several statutes governing and advancing these competing rights, responsibilities, and policies also converge and compete.

As stated in *JKB, Sr. v. Armour Pharmaceutical Co.,* 660 N.E.2d 602 (Ind.Ct. App.1996), *trans. denied:*

When interpreting a statute, the foremost objective is to determine and effect legislative intent. Statutes must be construed to give effect to legislative intent, and courts must give deference to such intent whenever possible. Thus, courts must consider the goals of the statute and the reasons and policy underlying the statute's enactment. Courts are to examine and interpret a statute as a whole, giving words their common and ordinary meaning, and not overemphasize a strict, literal, or selective reading of individual words. Words and phrases are taken in their plain, ordinary, and usual meaning unless a different purpose is manifested by the statute. Where possible, every word must be given effect and meaning, and no part is to be held meaningless if it can be reconciled with the rest of the statute.

*Id.* at 605. The meaning and intention of the legislature are to be ascertained not only from the phraseology of the statute but also by considering its nature, design, and the consequences which flow from the reasonable alternative interpretations of the statute. *Clark v. Kenley,* 646 N.E.2d 76, 78 (Ind.Ct.

App.1995), *trans. denied.* Statutes relating to the same general subject matter are in pari materia and should be construed together so as to produce a harmonious statutory scheme. *Id.; Sanders v. State,* 466 N.E.2d 424, 428 (Ind.1984).

As should become clear below, Indiana's statutory scheme becomes discordant when the policies favoring parental rights and the establishment of paternity conflict with those favoring adoptions. This conflict has been observed in Indiana and elsewhere previously. *See M.L.V.,* 598 N.E.2d at 1056 (Indiana's adoption statutes operate to extinguish the parental rights of putative fathers under certain circumstances in order to protect children and to shield all involved parties from unnecessary instability and uncertainty). As stated by Artis L. Campbell, Annotation, *Rights of Unwed Father to Obstruct Adoption by Withholding Consent,* 61 A.L.R. 5th 151, 176–77 (1998):

Historically, the rights of unwed fathers to make any determination regarding their children have been curtailed by state laws justified by stated considerations of public policy and the best interests of children. These restraints have been applicable particularly to the adoption of illegitimate children....

### A. Policy of Strengthening Family Life— Best Interests of Children

Indiana's General Assembly has announced that the policy of this state is to strengthen family life by assisting parents to fulfill their parental obligations. IND.CODE § 31–10–2–1(4). Our legislature has expressly stated that this public policy requires the provision of *fair* judicial procedures which recognize and enforce the legal rights of children and their parents. IND.CODE § 31–10–2–1(10)(A) & (B) (emphasis added). Moreover, the polestar of every statute governing the parent-child relationship is the best interests of the child. *See E.P. v. Marion County Office of Family and Children,* 653 N.E.2d 1026, 1032 (Ind.Ct.App.1995) (parents' constitutional right to raise their child must at all times yield to the child's best interest as determined by the courts of this state); *B.G. v. H.S,* 509 N.E.2d 214, 217

(Ind.Ct.App.1987) (the best interest of the child is the primary concern in an adoption proceeding); *O.S. v. J. M.*, 436 N.E.2d 871, 873 (Ind.Ct.App.1982) (the sole purpose of the paternity statutes is to benefit children born out of wedlock by establishing the legal procedures necessary to enable them to have the proper care, maintenance, education, protection, support and opportunities as afforded to children born in wedlock).

### B. Paternity

#### 1. Policy in Favor of Establishing Paternity

 In addition to the policies outlined above, Indiana's General Assembly has specifically announced its support of the policy favoring the establishment of the paternity of children born out of wedlock. IND.CODE § 31–14–1–1. Indiana courts will serve as a strong fortress to protect the rights of a natural father with respect to his child. *Matter of Adoption of Thomas*, 431 N.E.2d 506, 513 (Ind.Ct.App.1982), *trans. denied.* This right is conferred by the positive law of the land and is consonant with the law of nature and dictates of common humanity. *Id.* As stated in *Lehr v. Robertson*, 463 U.S. 248, 261–62, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983):

> The significance of the biological connection is that it offers the natural father an opportunity that no other male possesses to develop a relationship with his offspring. If he grasps that opportunity and accepts some measure of responsibility for the child's future, he may enjoy the blessings of the parent-child relationship and make uniquely valuable contributions to the child's development.

Moreover, and perhaps more importantly, a child's interests in establishing paternity in his natural father can include the establishment of familial bonds, indoctrination into cultural heritage, knowledge of family medical history, inheritance rights, social security survivor benefits, employee death benefits, and life insurance proceeds. *Clark*, 646 N.E.2d at 79.

#### 2. Establishing Paternity

If competent except for the person's age, a child may file a paternity petition at any time before the child reaches twenty (20) years of age. IND.CODE § 31–14–5–2(a). A man alleging to be the child's father must file a paternity action not later than two years after the child is born, *unless the alleged father has provided support for the child. Id.* (emphasis added). If the man has supported the child, the man must file the paternity petition not later than two years after he ceases paying support. IND.CODE § 31–14–5–3(c).

#### 3. Paternity Affidavit

The "paternity affidavit" described in IND. CODE § 16–37–2–2.1 prescribes a procedure under which a mother and a man who "reasonably appears to be the child's biological father" are provided an opportunity to execute an affidavit shortly after the birth of a child born out of wedlock which acknowledges the man's paternity of the child. The execution of a "paternity affidavit" operates to create a legal presumption that the man is the child's biological father. IND.CODE § 31–14–7–1(3). In paternity proceedings where a paternity affidavit has been submitted, an order establishing paternity and child support may be entered without the presentation of any additional evidence unless the putative father sets forth evidence rebutting his paternity. IND.CODE § 31–14–11–1. Also, an attorney or agency that arranges an adoption may at any time request that the State Health Department search its records to determine whether a paternity affidavit has been executed with respect to any particular child subject to a prospective adoption. IND. CODE § 16–37–2–2(f).

#### 4. Putative Father Registry

 The putative father registry is administered by the State Department of Health. IND.CODE § 31–19–5–2. The primary purpose of the registry is to determine the names and addresses of putative fathers and prescribe procedures for the provision of notice of adoption proceedings to be afforded to those putative fathers. The statutory scheme applies to putative fathers:

(1) whose name and address have not been disclosed by the mother of the child, on or before the date the mother executes a consent to the child's adoption, to:

 (A) an attorney; or

 (B) an agency;

that is arranging the adoption of the child; and

(2) who may have conceived a child for whom a petition for adoption has been or may be filed to provide notice of the adoption to the putative father.

A putative father who files with the registry is entitled to notice of his child's adoption under Ind. Trial Rule 4. IND.CODE § 31–19–5–4; *Matter of Adoption of M.A.S.*, 695 N.E.2d 1037, 1040 n. 6 (Ind.Ct.App.1998). Indiana Code § 31–19–5–5 provides:

> If, on or before the date the mother of a child executes a consent to the child's adoption, the mother does not disclose to an attorney or agency that:
>
> (1) is arranging; or
>
> (2) may arrange;
>
> an adoption of the child the name or address, or both, of the putative father of the child, the putative father must register under this chapter to entitle the putative father to notice of the child's adoption.

Indiana Code § 31–14–20–1 provides:

> (a) This section does not apply to a man whose paternity is established [under the procedures prescribed by IND.CODE § 31–14 (or the predecessor statutes)] before the filing of a petition to adopt the man's child.
>
> (b) A man who files or is a party to a paternity action under this article shall register with the putative father registry under IND. CODE § 31–19–5 within the period provided under IND. CODE § 31–19–5–12.

Indiana Code 31–19–5–12 provides:

> (a) To be entitled to notice of [an adoption], a putative father must register with the [putative father registry] not later than:
>
> (1) thirty (30) days after the child's birth; or

 (2) the date of the filing of a petition for the child's adoption;

whichever occurs later.

(b) A putative father may register under subsection (a) before the child's birth.

■ However, IND.CODE § 31–14–20–2 goes beyond the putative father registry's primary purpose of prescribing the procedures of providing notice by pronouncing that a putative father's failure to register will work the forfeiture of his parental rights in adoption proceedings as follows:

> (a) A man who fails to register with the putative father registry as required by [IND.CODE § 31–14–20–1 set out above], waives the right to notice of an adoption of a child who is the subject of the paternity action:
>
> (1) if the adoption is filed before the man establishes paternity; and
>
> (2) in which the child's mother does not disclose to an attorney or agency arranging the adoption the name or address of the child's putative father.
>
> (b) *A waiver under this section constitutes the man's irrevocably implied consent to the child's adoption.*

(Emphasis added).

### C. Adoption

#### 1. Policy in Favor of Adoptions

■ The state has a strong interest in providing stable homes for children. *B.G.*, 509 N.E.2d at 217. To this end, early, permanent placement of children with adoptive families furthers the interests of both the child and the state. *Id.; Lehr*, 463 U.S. at 264–65, 103 S.Ct. 2985; *Quilloin v. Walcott*, 434 U.S. 246, 98 S.Ct. 549, 553, 54 L.Ed.2d 511 (1978) (there exists a strong state policy of rearing children in a family setting). Adoption can provide stability and remove the stigma under which illegitimate children suffer. *Caban v. Mohammed*, 441 U.S. 380, 392, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979). Adoptions are encouraged in order to preclude the shifting of the primary responsibility for a child to the state. Campbell, 61 A.L.R.5th at 177.

### 2. Consummating an Adoption— Consents Required

Indiana Code § 31–19–9–1 sets out the following persons whose consent is necessary for an adoption to proceed.

(a) Except as otherwise provided in this chapter, a petition to adopt a child who is less than eighteen (18) years of age may be granted only if written consent to adoption has been executed by the following:

(1) Each living parent of a child born in wedlock.

(2) The mother of a child born out of wedlock and the father of a child whose paternity has been established by:

 (A) a court proceeding other than an adoption proceeding, except provided in IND. CODE § 31–14–20–2; or

 (B) a paternity affidavit executed under IND. CODE § 16–37–2–2.1; unless the putative father gives implied consent to the adoption under section 15 of this chapter.

(3) Each person, agency, or county office of family and children having lawful custody of the child whose adoption is being sought.

(4) The court having jurisdiction of the custody of the child if the legal guardian or custodian of the person of the child is not empowered to consent to the adoption.

(5) The child to be adopted if the child is more than fourteen (14) years of age.

(6) The spouse of the child to be adopted if the child is married.

(b) A parent who is less than eighteen (18) years of age may consent to the adoption without the concurrence of:

(1) the individual's parent or parents; or

(2) the guardian of the individual's person;

unless the court, in the court's discretion, determines that it is in the best interest of the child to be adopted to require the concurrence.

Thus, a child born out of wedlock may be adopted only if written consent to the adoption has been executed by the mother and the father whose paternity has been established by:

(A) a court proceeding other than the adoption proceeding, except as provided in IND.CODE § 31–14–20–2 [as set out above, this statute provides that a father's failure to file with the putative father registry constitutes the man's irrevocably implied consent to the child's adoption]; or

(B) a paternity affidavit executed under IND.CODE § 16–37–2–2.1.

IND.CODE § 31–19–9–1.

### 3. Consummating an Adoption—, Consents Not Required

On the other hand, IND.CODE § 31–19–9–8(a) provides that consent to adoption is not required from any of the following persons:

(1) A parent or parents if the child is adjudged to have been abandoned or deserted for at least six (6) months immediately preceding the date of the filing of the petition for adoption.

(2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:

 (A) fails without justifiable cause to communicate significantly with the child when able to do so; or

 (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

(3) The biological father of a child born out of wedlock whose paternity has not been established:

 (A) by a court proceeding other than the adoption proceeding; or

 (B) by executing a paternity affidavit under IND.CODE § 16–37–2–2.1.

. . .

(5) The putative father of a child born out of wedlock if the putative father's consent to adoption is irrevocably implied under [IND.CODE § 31–19–9–15].

(6) The biological father of a child born out of wedlock if the:

 (A) father's paternity is established after the filing of a petition for adoption in a court proceeding or by executing a paternity affidavit under IND.CODE § 16–37–2–2.1; and

(B) *father is required to but does not register with the putative father registry established by IND.CODE § 31–19–5 within the period required by IND. CODE § 31–19–5–12* [set out in previous section].

. . .

(8) A parent after the parent-child relationship has been terminated under IND. CODE § 31–35 (or IND.CODE § 31–6–5 before its repeal).

(emphasis added).

Additionally, Indiana Code § 31–19–9–15 prescribes a procedure under which a putative father whose parental rights have not otherwise been extinguished, must file a paternity action to establish his paternity within thirty (30) days after receiving notice of the mother's intention to make an adoptive placement of the child. If the putative father fails to file a petition to establish paternity within the thirty day period and fails to establish paternity within a reasonable time thereafter, his consent to the adoption is irrevocably implied without further court action. IND.CODE § 31–19–9–15.

### D. Involuntary Termination of Parental Rights for Unfitness

■■■■ In order for a termination of parental rights to satisfy the requirements of the Due Process Clause of the United States Constitution, the State must prove a parent's unfitness by clear and convincing evidence. *Tipton v. Marion County DPW*, 629 N.E.2d 1262, 1265–66 n. 3 (Ind.Ct.App.1994) (citing *Quilloin*, 434 U.S. at 256, 98 S.Ct. 549). Parental unfitness must be proven, and cannot be presumed on the basis of the instigation of termination proceedings. *See Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Tipton*, 629 N.E.2d at 1268. The statutes promulgated under Title 31 of the Indiana Juvenile Code have been described as the "exclusive means for the State to effect the involuntary termination of a parent-child relationship." *Doe v. Daviess County Division of Children and Family Services*, 669 N.E.2d 192, 194 (Ind.Ct.App. 1996) (citing IND.CODE § 31–6–5–4(c) which has been repealed and replaced by IND.CODE § 31–35–2–4(b)(2)), *trans. denied.*

### IV. The Due Process Rights of Unwed Fathers

#### A. Due Process Generally

■■■■ The Due Process Clause of the United States Constitution and the Due Course of Law Clause of the Indiana Constitution prohibit state action which deprives a person of life, liberty, or property without the 'process' or 'course of law' that is due, that is, a fair proceeding. *Indiana High School Athletic Association, Inc. v. Carlberg*, 694 N.E.2d 222, 241 (Ind.1997) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865, (1950)). The same analysis is applicable to both federal and state claims. *Id.*

■■■■ 'An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case.' *Id.* (quoting *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)); *Mullane*, 339 U.S. at 313, 70 S.Ct. 652. Predicate to any analysis of whether the process provided was fair is a determination that the claimant had a protectable life, liberty, or property interest at stake. *Id.* (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548(1972)). Only after the precise nature of the private interest threatened by the State has been identified can we properly evaluate the adequacy of the State's process. *Lehr*, 463 U.S. at 257, 103 S.Ct. 2985.

■■■■ In addition to guaranteeing fair process, the Due Process Clause also provides heightened protection against state interference with certain fundamental rights and liberty interests. *Carlberg*, 694 N.E.2d at 242 (quoting *Reno v. Flores*, 507 U.S. 292, 301–302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) and *Planned Parenthood v. Casey*, 505 U.S. 833, 851, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992)). The Due Process Clause will protect those rights and liberties 'so rooted in the traditions and conscience of our people as to be ranked as fundamental' and 'implicit in the concept of ordered liberty,' such that

'neither liberty or justice would exist if they were sacrificed.' *Id.* (quoting *Palko v. Connecticut,* 302 U.S. 319, 325–26, 58 S.Ct. 149, 82 L.Ed. 288 (1937)).

### B. Due Process Protection of Parental Rights

The intangible fibers that connect parent and child have infinite variety and are woven throughout the fabric of our society, providing it with strength, beauty, and flexibility. *Lehr,* 463 U.S. at 257, 103 S.Ct. 2985. It is entirely settled that the right to raise one's children is an essential, basic right, more precious than property rights, within the protection of the Fourteenth Amendment to the United States Constitution. *See Matter of Paternity of Baby Girl,* 661 N.E.2d 873, 877 (Ind.Ct.App.1996); *E.P.,* 653 N.E.2d at 1031 (citing *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) and *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)); *Wardship of Nahrwold v. Department of Public Welfare,* 427 N.E.2d 474, 477 (Ind.Ct.App.1981) (parents have a fundamental right to raise their children without undue interference by the state). Parental rights are sufficiently vital that, under the appropriate circumstances, they merit constitutional protection which will supersede state law. *Lehr,* 463 U.S. at 257–58, 103 S.Ct. 2985.

The custody, care, and nurture of children resides first in the parents, whose primary function and freedom include the preparation of the child for obligations that the state can neither supply nor hinder. *Id.* (citing *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944)). As the paramount interest is the welfare of children, the rights of parents are a counterpart of the responsibilities they have assumed. *Id.* at 257, 103 S.Ct. 2985. In other words, parental rights are inextricably linked with parental duty. *Id.*

### C. Unwed Fathers—Inchoate/Opportunity Interest

The United States Supreme Court has outlined the constitutional protection which must be afforded unwed fathers in four major cases decided since 1972. *See*

Campbell, 61 A.L.R. 5th 151, 177–78; *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Quilloin,* 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511, *Caban,* 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297, *Lehr,* 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614. These cases combine to instruct that, while the biological link between a putative father and his child alone does not warrant significant constitutional protection, an unwed father nevertheless has a constitutionally protected inchoate or "opportunity interest" to form a relationship with his child. *Lehr,* 463 U.S. at 261–64, 103 S.Ct. 2985. However, once the father has grasped this opportunity by demonstrating a full commitment to the responsibilities of parenthood by coming forward to participate in the rearing of his child, his parental rights with respect to that child ripen into an interest which is entitled to substantial protection under the Due Process Clause. *Id.; Caban,* 441 U.S. at 392, 99 S.Ct. 1760; *In re Adoption of Infant M.D.,* 612 N.E.2d 1068, 1074 (Ind.Ct.App.1993) (putative father's due process rights were violated where trial court divested father of his parental rights despite his biological link, fitness, and parental commitment), *trans. denied; B.G.,* 509 N.E.2d at 215.

### V. Analysis

In the present case, the record on appeal reflects that Father has grasped the opportunity to undertake his parental responsibilities toward the child by paying substantial and regular child support to Mother and exercising visitation. Under these circumstances, we hold that Father's inchoate or opportunity interest in being the child's parent has ripened into a fundamental, parental right entitled to substantial due process protection. Accordingly, we hold that Indiana's adoption statutes which have operated to automatically extinguish Father's rights without notice or a hearing have violated Father's rights to due process and/or due course of law as guaranteed under the United States and Indiana Constitutions. Moreover, and perhaps most importantly, the due process protection recognized here afforded to safeguard the relationship between the putative father and child is necessary to

ensure that the rights and interests of the child, which may deviate from those of the prospective adoptive parents, are adequately protected. *See Clark,* 646 N.E.2d at 79 (child has significant interests in establishing paternity in natural father). After all, as stated above, the polestar of any analysis involving the rights of a child is the best interest of the child. *See B.G.,* 509 N.E.2d at 217 (the best interest of the child is the primary concern in adoption proceedings).

■ To the extent that Father's interest in parenting the child (and the child's corresponding interest in establishing paternity in Father) must be afforded substantial due process protection, we hold that Father has retained the power to veto the proposed adoption under Indiana's statutory scheme governing parental rights. *Topel,* 571 N.E.2d at 1298 (power to veto adoption retained because the statutes governing adoptions should not be so liberally construed that safeguards erected for the preservation of family relationships are destroyed); *Baby Girl,* 661 N.E.2d at 876 (putative father retains veto power over adoption unless the proponents of the adoption prove that the putative father has so violated his natural and legal obligations to the child that he comes within the statute authorizing waiver of consent of the natural parents); IND.CODE § 31–14–5–3(c) (where putative father has supported the child, his right to establish paternity in that child is not extinguished until two years after he ceases to pay support).

Our sister states have observed that an unwed father who has grasped the opportunity to establish a relationship with his child retains the right to block an adoption by withholding his consent. *See generally,* Campbell, 61 A.L.R. 5th 151 (1998); *In Interest of E.C.B.,* 691 So.2d 687, 690–91 (La. Ct.App.1997) (father's commitment to his child precluded termination of his parental rights/adoption without his consent), *vacated,* 692 So.2d 1075; *Matter of Hood,* 930 S.W.2d 575, 578–79 (Tenn.App.1996) (statute which permitted mother to make adoptive placement without putative father's consent violated father's substantive due process rights); *Matter of Raquel Marie X.,* 76 N.Y.2d 387,

559 N.Y.S.2d 855, 559 N.E.2d 418, 426–28 (1990) (father sufficiently established a relationship with his child to have acquired the right to veto the proposed adoption; statute which required father to live with mother for six months as a prerequisite to obtaining power to veto adoption ruled unconstitutional), *cert. denied,* 498 U.S. 984, 111 S.Ct. 517, 112 L.Ed.2d 528; *Matter of Kiran Chandini S.,* 166 A.D.2d 599, 560 N.Y.S.2d 886, 888 (1990) (putative father sufficiently demonstrated his manifestation of parental responsibility to establish his right to veto the proposed adoption); *In re Adoption of B.G.S.,* 556 So.2d 545, 550, 552–55 (La.1990) (the due process rights of a father who had demonstrated his dedication to parental responsibilities were violated by statutes which purported to limit father's right to prevent mother from making adoptive placement of child without father's consent); *Matter of Adoption of Baby James Doe,* 572 So.2d 986, 989 (Fla.App.1990) (consent required of putative father who had provided child with support in a repetitive, customary manner); *Wade v. Geren,* 743 P.2d 1070, 1073 (Okla. 1987) (putative father's substantive due process rights attached where he had expended great amount of time, effort, and resources to take on the responsibility for rearing the child and for having the opportunity to develop an emotional bond with the child); *Durr v. Blue,* 454 So.2d 315, 320–21 (La.Ct.App. 1984) (to hold that a father who had acted as a father to the children for as long as he lived with their mother had forfeited his parental rights would constitute an unconscionable violation of father's due process rights), *writ. not considered;* But see, *In re Adoption of Reeves,* 309 Ark. 385, 831 S.W.2d 607, 608–609 (1992) (adoption effected without notice to the putative father upheld despite fact that putative father had developed a substantial relationship with his child because father had failed to file in the putative father registry).

### Conclusion

As set out above, we hold that the Indiana adoption statutes which, as applied under the present circumstances, operate to automatically extinguish the parental rights of a putative father who has regularly and substantial-

ly supported and exercised visitation with his child violate principles of procedural and substantive due process as guaranteed by the United States and Indiana Constitutions.

However, as noted earlier, no evidentiary hearing has yet been conducted in this case. Therefore, we must reverse and remand for consideration of all contested issues including whether Father has in fact demonstrated a commitment to the responsibilities of parenthood sufficient to invoke the attachment of substantial due process protection. If Father establishes his entitlement to substantial due process protection, his objection to (or veto of) the proposed adoption filed within the time prescribed by the Campbells in their pleadings is effective and fatal to the consummation of the proposed adoption. Nevertheless, Father's rights continue to be subject to waiver should he fail to file a paternity action in another proceeding within thirty days and follow through in establishing paternity within a reasonable time as provided by IND.CODE § 31–19–9–15.

Finally, even if Father establishes his entitlement to substantial due process protection as outlined above, the Campbells must be afforded the opportunity to litigate the allegations raised in their pleadings to the effect that Father has so violated his natural and legal obligations to the child that he comes within the statutory provisions authorizing the waiver of his consent. However, the harmonization of Indiana's statutory scheme governing the termination of parental rights requires that the Campbells establish the grounds for overriding Father's consent by clear and convincing evidence. *See Stewart v. Stewart,* 521 N.E.2d 956, 961 (Ind.Ct.App. 1988), *trans. denied.*

Reversed.

NAJAM, J., concurs.

SHARPNACK, C.J., dissents with separate opinion.

SHARPNACK, C.J., dissenting

I respectfully dissent. Where an appellant moves to dismiss the appeal and there is no opposition by the Appellee or any cross-appeal pending, we should dismiss the case. *See G.C. Murphy Co. v. Review Bd. of the Indiana Employment Security Div.,* 137 Ind. App. 476, 477, 210 N.E.2d 51, 51 (1965) (granting appellant's motion to dismiss where no cross-errors had been filed by the appellees and where no opposition was made to the motion to dismiss); *Federal Tire Co., Inc. v. Wingler,* 137 Ind.App. 527, 527, 210 N.E.2d 258, 258 (1965); *Felzien v. Felzien,* 137 Ind.App. 435, 436, 209 N.E.2d 524, 525 (1965) (granting appellant's motion to dismiss where the controversy between the parties had been settled); *State v. Chapius,* 187 N.E.2d 105, 105 (Ind.Ct.App.1963). While the majority appears to characterize the motion as something other than a motion to dismiss, I have no reason to conclude that it is anything but a motion to dismiss indicating the appellant's clear intention to have the entire case dismissed.

Furthermore, it is not for us to compel Appellants to continue litigation they wish to drop. I disagree with the majority's speculation that the agreement reached between these parties is illusory. The motion to dismiss stating that the parties had reached a settlement on visitation issues is directly contrary to this conclusion and we have no other facts before us to indicate that this matter has not been resolved to the satisfaction of the parties. The majority also relies upon the public interest exception to the mootness doctrine in denying the motion to dismiss. However, two of the cases cited in support of this public interest exception involved appeals that became moot not through the parties taking affirmative steps to resolve their conflicts, but by mere natural expiration of the event that produced the conflict. *See Board of Sch. Trustees of Muncie Community Sch. v. Barnell by Duncan,* 678 N.E.2d 799, 801 (Ind.Ct.App.1997) (appeal by student against school for expulsion became moot when period for which student had been expelled had passed); *Sowers v. Laporte Superior Court, No. II,* 577 N.E.2d 250, 251 n. 1 (Ind.Ct.App.1991) (appeal by inmate whose request to perpetuate testimony under Ind. Trial Rule 27 was denied presented a potentially moot question because his claim against the State had either been approved, thereby providing him with compensation, or denied,

allowing him to proceed with his lawsuit in which normal discovery was available to him). The third case cited, *Evans v. Tuttle*, held that promulgation of new regulations did not render an appeal moot because the new regulation only "alters the mechanism used to achieve the same result." *Evans v. Tuttle*, 613 N.E.2d 854, 857 (Ind.Ct.App. 1993). These cases do not support the application of the public interest exception to the case before us. Addressing issues that have become moot because relief can be no longer be fashioned does not necessarily affect the parties. However, to address questions made moot by a mutual resolution of the disagreement by other means denies the parties the opportunity to settle a matter on their own. Such a result is contrary to a policy that supports such settlements.

This appeal should be dismissed.