CRAWLEY, Judge,
dissenting.
I conclude that the trial court erred, as a matter of law, by finding that M.V.S. (the “father”) did not have a substantial relationship with the child. I agree with the application of Lehr v. Robertson, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983), to this case. The Supreme Court stated in Lehr:
“When an unwed father demonstrates a full commitment to the responsibilities of parenthood by ‘comfing] forward to participate in the rearing of his child,’ Caban [v. Mohammed], 441 U.S. [380] at 392[, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979) ], his interest in personal contact with his child acquires substantial protection under the due process clause. At that point it may be said that he ‘act[s] as a father toward his children.’ Id. at 389, n. 7, 99 S.Ct. 1760. But the mere existence of a biological link does not merit equivalent constitutional protection. ...
“The significance of the biological connection is that it offers the natural father an opportunity that no other male possesses to develop a relationship with his offspring. If he grasps that opportunity and accepts some measure of responsibility for the child’s future, he may enjoy the blessings of the parent-child relationship and make uniquely valuable contributions to the child’s development. If he fails to do so, the Federal Constitution will not automatically compel a state to listen to his opinion of where the child’s best interests lie.”
463 U.S. at 261, 103 S.Ct. 2985.
The father testified that the mother notified him of the birth of the child and that he visited the child about two weeks after the child’s birth. The father bought a stroller, a baby bed, and some clothes for the child and gave the mother a $225 money order. The father traveled from Atlanta, his home, to Mobile, the mother and child’s home, every four to six weeks. He testified that he gave the mother approximately $1,700 until the mother relinquished her rights to the child for adoption.
*155 As the majority opinion states, the father is about 25 years older than the mother, is married, and asked the mother to have an abortion. I also concede that the father was not always supportive of the mother during the pregnancy. However, Lehr does not require that the father be an exemplary unwed father. Lehr requires that an unwed father “accept[] some measure of responsibility for the child’s future.” Id. I have already expressed my disagreement with the relevancy of the pre-birth conduct of an unwed father as evidence of abandonment in adoption proceedings. See C.V. v. J.M.J. [Ms. 2970889, Feb. 12, 1999] — So.2d - (Ala.Civ.App.1999) (Crawley, J., dissenting); B.F. v. L.J.S., 771 So.2d 1029 (Ala.Civ.App.1999) (Crawley, J., dissenting).
I would rely heavily on Walker v. Campbell, 711 N.E.2d 42 (Ind.App.1199), in which the Indiana Court of Appeals held that a man who had fathered a child out of wedlock and had failed to register in accordance with Indiana’s Putative Father Registry requirements was nevertheless entitled to contest the adoption of his child. The father in Walker had not been adjudicated to be the father of the child, but he had provided regular child support and had maintained regular contact with the child for six years. The mother placed the child in this present case for adoption before the child was one year old. I would conclude that the father in this present case has accepted some responsibility for the child, as required by Lehr, during the months before the child was placed for adoption. Therefore, I must dissent.